# Exhibit 12

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Martinsburg, WV 25405*

*www.atf.gov*

907010: WJS
3311/305601

**JUL 2 1 2017**



Dear ▮▮▮▮▮▮

This is in reference to your recent submission and accompanying correspondence and supplemental video to, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB) which is accompanied by an AR-type firearm, with a battery powered, motorized pistol grip-type E-RAD device attached which is similar to a device FTISB has previously evaluated (FTISB letters 304248 and 304847).

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term **"machinegun"** as—

*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

As specified in the GCA, 18 U.S.C. § 921(a)(23), the term **"machinegun"** has *"the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."*

The submitted device is identified as an "E-RAD". As a part of this description you note that the submitted device has been *"specifically modified from the prior submission to address FTISB's concerns and ensure that the design is fully in line with all points of*

ATF 0677

*bump technology which ATF has already approved"*. You further state that the recent sample incorporates design features that ensures that, *"no part of the ERAD comes in contact with the trigger of any firearm at any time, and only the operator's finger comes into contact with the firearm's trigger when the E-RAD is in use"*. As a part of your correspondence, you state the E-RAD is *"not a machinegun"* which achieves a rate of fire of 400-450 rounds per minutes.

For your information, generally, a bump-fire type device operates when attached to an un-modified semiautomatic, AR-type firearm in the following manner:

When operated, a shooter must apply forward pressure to the forward handguard/fore-end of the AR-type rifle with the support hand. This brings the receiver assembly forward to a point at which the trigger can be pulled by the firing hand, which remains stationary. If sufficient forward pressure is not applied to the handguard with the support hand, the rifle can only be fired in a conventional semiautomatic manner with the firing hand. Forward pressure, *supplied by the shooter*, is necessary to perform "bump fire" since the reciprocation of the receiver assembly is necessary to reset the trigger, and fire subsequent rounds.

The FTISB examination of "bump-fire" type devices indicate that if, as a shot is fired and the shooter provides a sufficient amount of pressure to the handguard/gripping surface to counter the recoil, an AR-type rifle assembly will come forward until the trigger re-contacts the shooter's stationary firing-hand trigger finger, allowing a subsequent shot to be fired.

In this manner, the shooter pulls the upper assembly forward to fire each shot, such that the firearm cannot shoot automatically more than one shot, without manual reloading, by a single function of the trigger." The analysis as to whether a shooter releases the trigger and consciously pulls the trigger a second time is unnecessary in such cases because the firearm is not functioning "automatically." Our examination of the submitted E-RAD device, found the submitted device did not function in this manner. In fact, the E-RAD device utilized an electric motor in place of a shooter's positive input.

The sample examined by FTISB personnel, attached to Windham Weaponry Model WW-15, serial number WW171280, consists of a plastic or polymer "grip" attached to the host AR-type receiver by a metal cap screw.



The grip is assembled utilizing six machine cap screws. A metal button was observed just below the trigger guard of the host weapon. This metal button, when depressed, initiates function of the battery-powered motor contained within the E-RAD grip.



An additional metal component was observed as a part of the E-RAD grip. For the purpose of this examination, this component will be identified as the E-RAD **trigger shoe**, which rests below and reciprocates around the AR-type trigger and is driven by the battery–powered motor.

ATF 0679



Trigger Shoe

FTISB also noted a metal spring resting behind the trigger shoe along with a plastic, spring-activated button which comes into contact with the trigger being pulled. This plastic trigger has two red wires attached and further connected to the bottom of the accompanying motor. FTISB personnel found that this plastic button, with or without the silver portion attached, assists the initiation and termination function of the battery-powered motor during the functioning of the E-RAD grip.

For the purpose of this examination, the AR-type trigger will be identified as the **"trigger" because it initiates the firing of the host firearm when the E-RAD is installed**.

FTISB disassembled the E-RAD device to observe the internal components and dimensions. The submitted grip assembly incorporated the following design features or characteristics (see enclosed photographs):

- Electric Motor.
- Trigger Shoe.
- Battery powered, camming metal lobe designed to interact with trigger shoe.
- (2) 9-Volt Batteries.
- Right and Left Grip Panels.

ATF 0680

Case 4:23-cv-00830-O    Document 77-10    Filed 12/01/23    Page 37 of 41    PageID 3439



FTISB personnel noted the Windham Weaponry, Model WW-15 AR-type firearm, serial number **WW171280** incorporates un-modified semiautomatic configured fire-control components with no modifications made to the frame or receiver to permit machinegun function. A field function test of the aforementioned firearm found the host firearm functions as designed, as a semiautomatic rifle.

As a part of this examination, FTISB personnel test-fired the E-RAD utilizing commercially available Hornady and Winchester brands of .223 Remington caliber ammunition and an accompanying compatible magazine. The Windham Weaponry, Model WW-15, AR-type firearm, serial number WW171280 was fired by FTISB personnel as received.

During this test-fire portion of the examination, our Branch observed machinegun function six times. FTISB found the depression or pull of the grip button *alone*, does not initiate the firing sequence because it merely initiates the electric motor. Consequently this does not permit the host firearm to expel a projectile by the action of an explosive. However, test-firing of this device demonstrated that after the grip button engages the electric motor, the E-RAD allows the firearm to operate automatically more than one shot, with a single function of the trigger. This initiates an automatic firing cycle that continues until the operator's finger is released or the ammunition supply is exhausted.

We note first that upon closer examination of the device interacting with the semiautomatic fire-control components, FTISB personnel did not observe "hammer-follow"—a process in which the hammer is not retained by the disconnector after firing and it moves forward, by itself, and strikes the firing pin once a new round is chambered. Our Branch found that after the initial pull of the trigger, the host firearm does not incorporate "hammer follow" function because it briefly utilizes the firearm's disconnector or trigger resetting feature.

To fire as designed, the E-RAD grip button is depressed and constant pressure is applied to the trigger. The hammer is released from the trigger sear surface, travels forward and strikes the firing-pin, thus expelling a projectile by the action of an explosive. The

ATF 0681

hammer and trigger sear surface are shown here on a semi-automatic AR-15, for reference.



Then, once the hammer is pushed to the rear when the rifle recoils, the hammer is *briefly* retained by the disconnector until the motorized camming metal lobe rotates and *pushes* the trigger shoe forward, subsequently forcing the operator's trigger finger forward. This is a vital difference between the E-RAD and typical semiautomatic operation. In semi-automatic operation, a shooter must release the trigger to "reset" the firearm for a subsequent shot. The E-RAD functioning negates this need and performs this function, forcing the finger to move forward and subsequently releases the hammer, allowing it to again be retained by the trigger sear surface for a subsequent shot to be fired. A second shot is then fired because the shooter has retained a single, constant pull that again releases the hammer once the camming lobe stops pushing forward. This process is shown here.



ATF 0682





In this way, the firing sequence is initiated by a pull of the trigger and trigger shoe and perpetuated *automatically* by the reciprocating, battery-powered metal lobe that allows firing of multiple rounds as long as the shooter maintains a constant, single pull on that trigger.

We found that during the aforementioned testing, if the trigger was *pulled and released* deliberately, *with or without* the grip button engaged, a single shot could be fired for each single pull of the trigger. However, just as with other machineguns, the firing of a single projectile is accomplished only through a conscious and deliberate *release* of the trigger once a round is fired. Failure to release the trigger results in the firing of more than one round, as described above.

Therefore, we again note an important fact concerning the design of the E-RAD. In a firearm *without* the E-RAD installed, the hammer resets only when the shooter actually, consciously releases pressure on the trigger, thereby allowing the disconnector to release the hammer so that it may again be retained by the trigger sear surface. In firearms *with*

the E-RAD installed, the functioning differs at this point. In the E-RAD, the motor acts to reset the hammer *automatically.* This automatic functioning, made possible by the electric motor, is a significant difference from actual bump-fire devices utilizing a shooter's manual power, as described above.

Indeed, the E-RAD is specifically designed, with the use of an electric motor, to move the shooter's finger and allow the hammer to reset and engage the trigger sear surface. However, through this process, *the shooter has never released the trigger itself, instead applying a single, constant pull.* When the camming metal lobe cams such that forward pressure is released, the shooter's constant pull again releases the hammer and causes a second round to fire.

A single pull of the trigger by the shooter therefore starts a firing sequence in which *semiautomatic* operation is made *automatic by an electric motor.* ATF has long held that a single pull of the trigger is the same as a "single function" of the trigger. Similarly, a single release of the trigger is a single function of the trigger. In this way, certain "binary" triggers increase the rate of fire but are not machineguns because they fire only a single shot when the trigger is pulled, and a single shot when the trigger is released.

As a result of the subject test weapon, with installed **E-RAD device,** firing automatically more than one shot, without manual reloading by a single function of the trigger, the submitted E-RAD device (attached to the submitted Windham Weaponry, Model WW-15 AR-type firearm, serial number WW171280) is classified as *a combination of parts* designed and intended, for use in converting a weapon into a machine gun, and is thus a **"machinegun"** as defined in 26 U.S.C. § 5845(b) and 18 U.S.C. § 921 (a) (23). Please be aware that the manufacture and distribution of the device described in this correspondence must comply with all provisions of the NFA and GCA, including 18 U.S.C. § 922(o).

The submitted E-RAD device is designed to utilize a battery-powered electric motor which automatically continues the firing sequence and causes a firearm to shoot automatically by the *automatic* resetting of the firearm hammer utilizing an electric motor. With constant pressure or a single pull of the firearm trigger while the ERAD device is engaged, the host AR-type firearm shoots *automatically* more than one shot, without manual reloading, by a single function of the trigger. Such an item or device is classified as a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

Please be aware, if a device is designed to assist in preventing the hammer from positively resetting or which utilizes *a spring, electric motor or non-manual source of energy which assists in the automatic resetting of the hammer and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger*, such an item or device would be classified as a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

ATF 0684

Further, the incorporation of a positive disconnecting or trigger resetting feature alone, does not preclude or remove such a weapon or device from the definition of a "machinegun" as defined in NFA, 26 U.S.C. § 5845(b). Also, the absence of "hammer-follow" in an AR-type firearm, does not exclude such a firearm from being classified as a machinegun. FTISB machinegun classifications are based on the evaluation of the item as submitted and whether the item converts a weapon to shoot automatically, regardless of how reliably it shoots automatically more than one shot, without manual reloading, by a single function of the trigger.

FTISB finds that the host AR-type rifle, Windham Weaponry AR-type receiver (serial number WW171280), not having any modifications made which would cause it to fire automatically, or incorporating the frame or receiver of a machinegun; is not a "machinegun" as defined in 26 U.S.C. § 5845(b).

The host Windham Weaponry rifle will be returned via the accompanying prepaid UPS return label. Please advise our Branch within 60 days of receipt of this letter regarding the disposition of subject ERAD devices. The submitted E-RAD device, which is classified as a "machinegun" as defined in 26 U.S.C. § 5845(b), cannot be returned to unless you are a licensed firearms manufacturer who has paid the Special Occupational Tax (SOT).

We trust the foregoing has been responsive to your current evaluation request.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch