# Exhibit 17



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV 25405

www.atf.gov

AUG 2 8 2018

907010: RKD
3311/307385

▮▮▮▮
Buda, Texas 78610

Dear Sir,

This is in reference to your submission and accompanying correspondence to, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), accompanied by an AR-15 type rifle equipped with what is described as the ▮▮▮▮ AR1 trigger system (see enclosed photos). Specifically, you requested an examination and classification of this sample with regard to the amended Gun Control Act of 1968 (GCA) and the National Firearms Act (NFA).

As you know, the National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "**machinegun**" as—

…*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*

As specified in the GCA, 18 U.S.C. § 921(a)(23), the term "machinegun" has "*the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))*".

The submitted ▮▮▮▮ AR1, is described as a "*trigger-finger reset device*". You further describe the design and function of the device by explaining that "***this trigger system works by mechanically pushing the trigger rapidly forward, resetting the finger and trigger to the forward***

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 3 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 82 of 89   PageID 924

Page 2

*positon. This allows the user to make a decision in which they leave rearward pressure off the trigger to stop the firing sequence, or re-engage rearward pressure on the trigger to continue the firing sequence."* As a part of this description, you note that all of the components of the ▮▮▮▮ ▮▮▮▮ AR1 trigger are newly designed and include a bolt, housing, trigger, hammer, sear, springs and pins. FTISB notes that US Patent 9568264 (Flex-fire technology) covers the device, which is described as a technology to provide the potential of increasing both the rate of fire and the precision of fire at higher rates beyond the fundamental design capabilities of pre-existing semi-automatic arms.

Also, your correspondence notes that ATF has previously interpreted the phrase "single function of the trigger" to mean a single movement of the trigger, whether that movement is the pull of the trigger or the release of the trigger and it is your opinion that this device submitted is only a trigger reset device and not a "machinegun" as defined.

The sample examined by FTISB personnel consists of a Colt Competition .223/5.56 caliber AR-15 pattern rifle, serial number CCR012176, which is equipped with the following items:

- Modified bolt carrier.
- Newly constructed hammer assembly.
- Newly constructed fire control housing.
- Newly constructed trigger assembly having steel block mounted on rear of assembly.
- Newly constructed spring loaded sear assembly.
- Miscellaneous retaining axles/screws, plungers/springs.



Case 1:25-cv-01807-PX    Document 5-20    Filed 06/10/25    Page 4 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 83 of 89   PageID 925

Page 3

Provided illustration of [redacted] AR1 Trigger Device.



This illustration depicts how the parts interact.

No. 66 is the extension of the trigger that rests in the bolt cam

No. 28 is the portion of the trigger that interacts with the user's finger.

No. 38 is the spring loaded sear

No. 18 is the hammer.

The written correspondence received from [redacted] with the sample, provided the following statements and pictures offering a description of how the device differed in function from that of a standard unmodified AR-15 pattern rifle [Note: FTISB updated the pictures relevant to FTISB's analysis of the [redacted] AR1]:

*"We start with the trigger in the forward position and the hammer in the cocked position, with the bolt in battery."*

Case 1:25-cv-01807-PX    Document 5-20    Filed 06/10/25    Page 5 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 84 of 89   PageID 926

Page 4



"When the trigger is pulled rearward it also pivots upward into an open space in the bolt."



"As the trigger pivots back and up into the open space in the bolt, the sliding sear surface in the trigger separates from the tail of the hammer and the hammer releases and fires a round."

Case 1:25-cv-01807-PX    Document 5-20    Filed 06/10/25    Page 6 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 85 of 89   PageID 927

Page 5



"The explosion of the bullet causes the bolt to move in a rearward direction. As the bolt moves rearward it contacts the top of the trigger and forces the tip of the trigger down, pivoting the blade of the trigger to the forward (reset) position."



"At this point the trigger is in the forward (un-pulled) position. The bolt continues rearward cocking the hammer, which moves the integrated trigger sear rearward". [We note that the shooter maintains a constant rearward pull on the trigger and the internal mechanism automatically forces the individual's finger/trigger forward instead of requiring that the shooter release the trigger.]

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 7 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 86 of 89   PageID 928

Page 6



*"At the rear of the bolt's stroke the hammer is cocked and the trigger sear is forced forward into a reset position (by spring pressure), locking the hammer in the cocked position."*



*"The bolt returns to battery and the hammer is now cocked against the trigger ready to fire the next round".*

As explained below, a single constant rearward pull will cause the firearm to fire until the trigger is released, the firearm malfunctions, or the firearm exhausts its ammunition supply.

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 8 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 87 of 89   PageID 929

Page 7



**Submitted Sample Rifle**



Sample modified bolt carrier showing added contact surface that interfaces with trigger.



Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 9 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 88 of 89   PageID 930

Page 8

FTCB exemplar standard bolt carrier.



Internal View - Sample fire control mechanism (installed).



Sample fire control mechanism with the bolt carrier removed from firearm.



ATF0088

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 10 of 14
Case 4:23-cv-00830-O   Document 40-1   Filed 09/08/23   Page 89 of 89   PageID 931

Page 9

Overhead view of fire control mechanism



Sample housing with trigger assembly removed.



Sample ███████ AR1 fire control mechanism installed in AR-15 type firearm.



As a part of this examination, FTISB conducted initial manual field-testing of the sample. The field test revealed that when the trigger was pulled with sufficient force to release the hammer, and the shooter maintains constant pressure on the trigger, the firearm expelled a projectile, extracted and ejected the casing, loaded another round, and fired. This continued until the trigger was released. A test fire with live ammunition resulted in the firearm shooting automatically more than one shot, without manual reloading, by a single function of the trigger.

Additionally, during the finger activated firing sequences (with the trigger finger retained in a constant position), after firing several cartridges the sear failed to retain the hammer, which simply followed the bolt forward leaving a substantial firing pin mark on the primer of the chambered cartridge without firing the cartridge.

**Photo of FTISB test cartridge removed from sample after hammer follow incident.**

 

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 12 of 14
Case 4:23-cv-00830-O   Document 40-2   Filed 09/06/23   Page 2 of 57   PageID 933

Page 11

In order to demonstrate the sample fired more than one shot, without manual reloading, with a single function of the trigger, rather than firing a single shot with each function of the trigger, the following procedure was followed.

- A common 8-inch zip-tie was installed around the rear of the grip and the front of the sample's trigger.

- The zip-tie was gradually tightened until the trigger was retracted just enough to release the hammer.

- With the trigger retained in this position, the bolt assembly was retracted and retained in an open position, with the aid of the bolt catch.

- A ten-round ammunition load was placed into the sample's magazine, and the magazine was inserted into the firearm.

- Without touching the trigger (which was being retained in a fixed position by the plastic zip-tie), the bolt catch was depressed allowing the firearms bolt to travel forward and chamber a cartridge. Upon chambering and firing the first cartridge, the weapon cycled and fired five cartridges automatically <u>without the trigger being released.</u> The sear also failed to retain the hammer on the 6th cartridge, but did not strike the primer with sufficient force to fire that cartridge, thereby stopping the firing sequence.

- This same test was repeated several times with the sample firing from three to ten cartridges with a single function of the trigger before a malfunction was encountered or the ammunition load expended.



Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 13 of 14
Case 4:23-cv-00830-O   Document 40-2   Filed 09/08/23   Page 3 of 57   PageID 934

Page 12

The previous still image extracted from a video of the FTISB test fire shows cartridge chambering in the yellow box and one of the ejected cartridges in the red box. Note that additional ejected cartridge cases are out of frame and trigger is retained with zip-tie and not in contact with finger.

Federal law defines "machinegun," in relevant part, as "any weapon which shoots, is designed to 1shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" as well as a "combination of parts designed and intended, for use in converting a weapon into a machinegun." Legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, as you note, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger. Therefore, a firearm is not a machinegun if a projectile is expelled when the trigger is pulled and a second projectile is expelled when the trigger is released.

As stated above, your own description of the ▓▓▓▓▓▓ AR1 trigger system includes the following statements, "*this trigger system works by mechanically pushing the trigger rapidly forward, resetting the finger and trigger to the forward positon. This allows the user to make a decision in which they leave rearward pressure off the trigger to stop the firing sequence, or re-engage rearward pressure on the trigger to continue the firing sequence.*"

Federal courts have noted that automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Id*. Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequent is a single function of the trigger. *Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009); *Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-00243-RLY-MPB (S.D. Ind. Mar. 27, 2018). *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002)(in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In the *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward. *Freedom Ordnance Mfg., Inc*, No. 3:16-cv-00243-RLY-MPB. In these cases, a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger.

FTISB testing indicated that continuous rearward pressure after the initial pull of the trigger initiates a "firing sequence" which discharges multiple rounds with a single function of the trigger. A device with a trigger that is mechanically forced forward during a cycle of operation or firing sequence, which results in more than one round being fired with a "single function of a trigger," is a machinegun. This type of operation is distinguishable from firearms that have not been classified as machineguns, including those that fire one round when the trigger is manually pulled and one round when the trigger is manually released.

Case 1:25-cv-01807-PX   Document 5-20   Filed 06/10/25   Page 14 of 14
Case 4:23-cv-00830-O   Document 40-2   Filed 09/08/23   Page 4 of 57   PageID 935

Page 13

The ▮▮▮▮▮ AR1 is a device which is designed to assist in preventing the hammer from positively resetting (requiring that the shooter release the trigger in order to fire the next round) and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. This device is a, combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

Additionally, note that on several occasions during the testing of this device, the hammer was found to have followed the bolt into battery as it chambered a cartridge. FTISB has also evaluated similar devices, which have prevented the trigger from positively resetting and resulted in such a "hammer-follow" scenario. A device designed to prevent the hammer from positively resetting could cause a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and would also be classified as a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun; thus a **"machinegun"** as defined in 26 U.S.C. 5845(b).

Consequently, the submitted sample ▮▮▮▮▮ AR1 trigger assembly equipped firearm is a "machinegun" as defined in the NFA, and is subject to all NFA provisions. In addition, the sample ▮▮▮▮▮ AR1 trigger assembly parts are a combination of parts designed and intended, for use in converting a weapon into a machinegun, and as such, in and of themselves, would be defined as a "machinegun" and subject to all NFA provisions.

The GCA prohibits the possession or transfer of any machinegun manufactured after May 19, 1986 with the limited exceptions of transfers to or by the government, and possession under the authority of the government. *See* 18 U.S.C. § 922(o). Based on these exceptions, Type 07 (manufacturer) and Type 08 (importer) Federal firearms licensees to manufacture or import firearms after May 19, 1986 for sale or distribution to the government. Because you are a 07/02 FFL/SOT, ATF will return the ▮▮▮▮▮ AR1 trigger device equipped firearm upon receipt of a prepaid common carrier shipping label or FedEx shipping account billing number. Please be advised that the firearm/device will need to be properly marked, and an ATF Form 2 submitted by the close of the following business day that you receive the sample.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

*[signature]*

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch


cc: Rick Vasquez Firearms LLC