Exhibit 18

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Firearms Technology Criminal Branch
## Report of Technical Examination

|  | 244 Needy Road #1600<br>Martinsburg, WV 25405<br><br>Phone: 304-616-4300<br>Fax: 304-616-4301 |
|---|---|
| To:<br>Special Agent Michael T. Nuttall<br>Bureau of Alcohol, Tobacco, Firearms and Explosives<br>99 New York Avenue NE<br>MS: 90K-250<br>Washington, DC 20026 | Date: 10/20/2021<br><br>UI#: 163080-21-0006<br><br>RE: Rare Breed FRT-15<br><br>FTCB#: 2021-676-RKD Exp.<br>317388 |
| Date Exhibit Received: 08/11/2021 | Type of Examination Requested: |
| Delivered By: FedEx# 7744 8498 2076 | Examination, Test, Classification |

### Exhibit:

2. Rare Breed Triggers, model FRT-15, no serial number (suspected machinegun).

### Pertinent Authority:

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 CFR. 0.130 the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms Ammunition and Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state, and local law enforcement agencies regarding the Gun Control Act and National Firearms Act.

The amended Gun Control Act of 1968 (GCA), defines the term **"machinegun"** has "*the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))*." (See 18 U.S.C. § 921(a)(23).)

The NFA, defines **"firearm"** to mean, in part: *"...(6) a machinegun...."* (See 26 U.S.C. § 5845(a).)

The NFA, defines the term **"machinegun"** as follows: "*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a*

ATF Form 3311.2
Revised September 2014
ATF 0832

Special Agent Michael T. Nuttall
163080-21-0006
2021-676-RKD
Page 2

## Pertinent Authority (Cont.):

*weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."* (See 26 U.S.C. § 5845(b).)

The National Firearms Act of 1934 (NFA) **Identification of firearms other than destructive devices**. *"Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe."* (See 26 U.S.C. § 5842(a).)

27 CFR § 479.11 defines the term "**machinegun**" and includes, in part: *"...For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter."*

## Background:

ATF-FTISB previously examined a "forced reset trigger" from ▮▮▮▮▮▮▮▮▮▮▮ *AR1 Trigger,* FTISB 307385) received in 2017 from ▮▮▮▮▮ located in Buda, Texas. The device was accompanied by paperwork submitted by Rick Vasquez Firearms LLC. In November of 2017 (see attachment B), FTISB noted that what appeared to be a patent drawing depicting a <u>hammer</u> fired ignition system was included within the submission paperwork and inquired if a patent had been applied for on the device, and if so, under what name and patent number (see attachment C). FTISB was informed that the patent for the general mechanism was "*Flex-Fire Technology US 9,568,264"* (see attachment D). Note that this and two additional "*Flex-Fire*" patents are cited in a later patent obtained by ▮▮▮▮▮▮ .

The above patent's applicant/inventor is listed as Thomas Allen Graves of Buda, Texas. US patent 9,568,264 stated; *"It is possible by the application of Flex-Fire Technology (FFT) to have a high energy trigger reset system. A high energy trigger reset system implies a trigger that is reset by direct mechanical reaction to a gun bolt without necessity of a spring system limiting trigger reset energy.* This patent document also contained the statement; *"This invention is also primarily focused on striker fired semi-automatic arms as opposed to hammer fired semi-automatic arms."* FTISB notes that the ▮▮▮▮▮ AR1 Trigger System incorporated a <u>hammer</u> rather than a <u>striker</u> fired ignition system.

ATF-FTISB's evaluation of the ▮▮▮▮▮ AR1 Trigger is detailed within FTISB letter 307385 dated August 28, 2018 (see attached E). The first paragraph of the accompanying paperwork received with the ▮▮▮▮▮▮ AR1 trigger included the following statement which was noted within FTISB's response:

*"This trigger system works by mechanically pushing the trigger rapidly forward, resetting the finger and trigger to the forward position. <u>This allows the user to make a decision in which they leave rearward pressure</u>*

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 3

**Background (cont.):**

*off the trigger to stop the firing sequence,* or re-engage rearward pressure on the trigger to continue the firing sequence".

ATF-FTISB's response letter (307385) goes on to describe the device evaluated and testing preformed, and utilized graphic images provided with the device. The body of this response letter also included the following:

Federal law defines "machinegun," in relevant part, as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" as well as a "combination of parts designed and intended, for use in converting a weapon into a machinegun." Legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, as you note, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger. Therefore, a firearm is not a machinegun if a projectile is expelled when the trigger is pulled and a second projectile is expelled when the trigger is released.

As stated above, your own description of the ▮▮▮▮▮▮ AR1 trigger system includes the following statements, "*this trigger system works by mechanically pushing the trigger rapidly forward, resetting the finger and trigger to the forward position. This allows the user to make a decision in which they leave rearward pressure off the trigger to stop the firing sequence, or re-engage rearward pressure on the trigger to continue the firing sequence.*

Federal courts have noted that automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Id.* Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequent is a single function of the trigger. *Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009); *Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-00243-RLY-MPB (S.D. Ind. Mar. 27, 2018). *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002)(in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In the *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward. *Freedom Ordnance Mfg., Inc*, No. 3:16-cv-00243-RLY-MPB. In these cases, a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger.

FTISB testing indicated that continuous rearward pressure after the initial pull of the trigger initiates a "firing sequence" which discharges multiple rounds with a single function of the trigger. A device with a trigger that is mechanically forced forward during a cycle of operation or firing sequence, which results in more than one round being fired with a "single function of a trigger," is a

Special Agent Michael T. Nuttall
163080-21-0006
2021-676-RKD
Page 4

**Background (cont.):**

machinegun. This type of operation is distinguishable from firearms that have not been classified as machineguns, including those that fire one round when the trigger is <u>manually</u> pulled and one round when the trigger is <u>manually</u> released.

The ████████ AR1 is a device which is designed to assist in preventing the hammer from positively resetting (requiring that the shooter release the trigger in order to fire the next round) and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. This device is a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun; thus a 'machinegun' as defined in 26 U.S.C. § 5845(b).

ATF-FATD received an e-mail (see attachment F) from ████████ regarding return shipment of the device on September 14, 2018, ████████ notes that they have an 07/02 FFL/SOT, and requests the return of the item be delayed until October 2, 2018, because they will be away from the FFL address and will need to submit an ATF FORM 2 (notice of Firearms Manufactured or Imported) on the item, in this case a "machinegun", by the close of the following business day it is received.

A second related FLEX-FIRE TECHNOLOGY patent, US 9,816,772 B2 (see attachment G), also listing Thomas Allen Graves of Buda, Texas as the applicant/inventor was granted on November 14, 2017. This patent notes the earlier FLEX-FIRE TECHNOLOGY patent number 9,568,264 claims priority with both being incorporated herein by reference. This second patent also depicts a striker fired ignition system and contains the statement; *"This invention is also primarily focused on striker fired semi-automatic arms as opposed to hammer fired semi-automatic arms."*

A third related patent, US 9,939,221 B2, FLEX-FIRE G2 TECHNOLOGY, issued on April 10, 2018, to Thomas Allen Graves of Buda, Texas, is noted to be a continuation -in-part of US Pat. No. 9,816,772 entitled FLEX-FIRE TECHNOLOGY, which is a divisional of U.S. Pat. No. 9,568,264 entitled FLEX-FIRE TECHNOLOGY. This third related patent also depicts a striker fired ignition system (see attachment H).

Next is United States Patent no.: 10,514,223 B1 issued on December 24, 2019, and having the applicant listed as ████████ , and the inventor as Jeffrey Cooper Rounds, both of Buda, Texas (see attachment I). This patent includes illustrations which more closely parallel the Exhibit 2 Rare Breed FRT-15 assembly in its "drop-in" concept, though having differing geometry in its component parts. This patent document acknowledges a similarity with the three previously detailed FLEX-FIRE TECHNOLOGY/ FLEX-FIRE G2 TECHNOLOGY patents as follows:

*Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and U.S. Pat. No. 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. This invention, however, does not provide a "drop-in" solution for existing popular firearm platforms, like the AR15, AK47 variants, or the Ruger 10/22TM. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.*

Special Agent Michael T. Nuttall

**Background (cont.):**

On May 7,2020, the "Assignment of Assignors Interest" on Patent 10,514,223 is transferred from ███████████ ███████ to RARE BREED TRIGGERS, LLC (see attachment J). Both named inventors, Thomas Allen Graves (FLEX-FIRE TECHNOLOGY), and Jeffery Cooper Rounds ██████████████████ ), and two of the three named business entities, FLEX-FIRE TECHNOLOGY, and ██████████████ , involved in the previously listed patents, share a common geographical nexus to the Buda, Texas area.

In early 2021, ATF Agents contacted the ATF-FATD to inquire if the RARE BREED FRT-15 trigger assembly currently being sold had been examined and classified by the Division. They were informed that this specific trigger assembly has not been submitted or examined, however, previous devices incorporating similar operating principles had been classified as a combination of parts designed and intended to convert a weapon into a machinegun, and therefore a "machinegun" under the NFA. As previously noted, one such determination letter was issued on August 28, 2018, to ████████████ /Richard Vasquez Firearms, LLC (see attachment E).

On June 4, 2021, ATF-FATD received a RARE BREED FRT-15 trigger assembly for evaluation under Investigation number 163080-21-0006/2021/595-DAS. A report was signed on July 15, 2021, with a determination that  the RARE BREED FRT-15 trigger assembly is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, it is a "machinegun" as defined. This report provided background information to include (see attachment K):

> Federal regulation, 27 CFR § 479.11, states that the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger.  Indeed, Federal courts have long held that automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." Id.

> Further, Federal regulation 27 CFR § 479.11, states that "single function of the trigger" means a single pull of the trigger and analogous motions. Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequence is a single function of the trigger. *Atkins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009); *Freedom Ordnance Mfg., Inc. v. Brandon*, 2018 U.S. Dist. LEXIS 243000 (S.D. Ind. Mar. 27, 2018) . *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002)(in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward. *Freedom Ordnance Mfg., Inc*, No. 3:16-cv-00243-RLY-MPB. In these cases, a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger.

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 6

**Background (cont.):**

ATF Tampa Field Division issued a letter dated July 26, 2021, to Rare Breed Trigger, LLC. This letter informs Rare Breed Triggers, LLC that the FRT-15 has been classified as a "machinegun" as defined by the NFA and GCA and to cease and desist all manufacture and transfer of the Rare Breed Trigger FRT-15 (see attachment L).

On August 2, 2021, Rare Breed Triggers, LLC/Kevin C. Maxwell filed a complaint for declaratory and injunctive relief (Case 6:21-cv-01245)(see attachment M). Kevin C. Maxwell's Affidavit in this proceeding contains forty-six-line items to include the following regarding steps taken by the plaintiff, as to the device's compliance with federal law, prior to/after manufacturing/marketing the device:

> *9. Before the FRT-15 ever went to manufacturing, I submitted the prototype to legal counsel, Kevin P. McCann, Esq., seeking a legal opinion letter about the FRT-15's compliance with federal law – specifically whether it fit the definition of a "machinegun."*

> *16. On or about August 6, 2020, received an opinion from IFSA's Director, Daniel O'Kelly. Mr. O'Kelly is also a former ATF Senior Special Agent and the Chief Firearms Technology Instructor at the ATF National Academy, where he wrote and co-wrote the entire firearms technology course of study used to train Agents and Investigators on among other things, what is and is not a machinegun.*

ATF-FATD notes that no prototype Rare Breed FRT-15 sample was ever submitted to ATF-FATD for evaluation. FATD's FTISB and FTCB Branches are the only branches within ATF authorized with the evaluation and classification of such devices.

> *18. After the FRT-15 went into manufacturing, I sought two additional examinations and opinions from two additional national firearms experts to ensure that any development changed to aid in the manufacturing of the FRT-15 had not changed its function in any way that would cause it to fall under the definition of a "machinegun.*

> *19. On or about February 24, 2021, the Plaintiffs received an opinion letter from Rick Vasquez, another former ATF Special Agent and Former Acting Chief of the Firearms Technology Branch. Where he served as the ATF's expert on all Gun Control and National Firearms Act Identification and classifications. Firearms Technology Branch is arm of the ATF which alluded to have conducted the examination upon which the Cease and Desist letter is based.*

> *20. Mr. Vasquez again analyzed the functions of the FRT-15 against the definition of a "machinegun" under federal law and concluded that the manufactured version of the FRT-15 does not meet the definition of a "machinegun" ("Vasquez Opinion Letter). A true and correct copy of the Vasquez Opinion Letter is attached to my Complaint and to my motions for injunctive relief.*

Mr. Vasquez noted that the ATF Firearms Technology Branch (the predecessor of the ATF Firearms and Ammunition Technology Division) is the branch of ATF charged with rendering firearms classification decisions. FATD notes that the FRT-15 was not submitted to ATF for evaluation at this time.

Special Agent Michael T. Nuttall

**Background (cont.):**

ATF-FATD notes that this Opinion Letter dated February 24, 2021, under Exhibit C of the plaintiff's filing contains the following under III CONCLUSION:

> *The FRT trigger is a self-contained trigger assembly with a redesigned hammer, trigger, and locking bar (disconnector). The FRT trigger system does not have an automatic sear nor does it operate by electronics, springs, or hydraulics, therefore, is not a "machinegun". Additionally, there is no verifiable history of ATF opinions to support this trigger being classified as a machinegun, both in general and specifically pertaining to the underlying design.*

In consideration of ATF's 2018 ▮▮▮▮ AR1 trigger system "machinegun" determination, and an earlier 2004 "machinegun" determination on a similar type of trigger device, the claim that there is no verifiable history of ATF opinions to support this trigger being classified as a machinegun, <u>both in general and specifically pertaining to the underlying design, is not correct. Also, the RARE BREED FRT-15 trigger was never submitted to ATF for evaluation.</u> Further, consider the following points noted in the above background section of this report:

- In 2017, FTISB received the ▮▮▮▮ AR1 trigger system from ▮▮▮▮ with accompanying paperwork submitted by Rick Vasquez Firearms LLC. The applicable patent was stated to be Flex-Fire Technology U.S. 9,568,264 (see attachment D). The submitted ▮▮▮▮ AR1 trigger system was classified as a "machinegun" in 2018.

- ▮▮▮▮ received U.S. Patent 10,514,223 B1 in December 2019 (see attachment I), which references the above Flex-Fire Technology patent and two additional Flex-Fire patents as a device for increasing the rate of semiautomatic fire, with the distinction that this latest patent provides a "drop-in" solution for existing popular firearm platforms.

- In May 2020, "Assignment of Assignors Interest" on U.S. Patent 10,514,223 B1 is transferred from ▮▮▮▮ to Rare Breed Triggers LLC. ATF-FATD does not have any information pertaining to whether ▮▮▮▮ informed Rare Breed Triggers LLC as to the "machinegun" determination received in 2018 on the previously submitted AR1 trigger system; however, it seems unlikely this information would not convey along with the Patent Assignment.

*21. On or about May 4, 2021, we received an opinion letter from Firearms and Interstate Nexus Consulting, LLC ("FTINC") in Grand Rapids Michigan, Via the company's owner, Brian Luettke.*

*22. ...... and in his last position with ATF, was Chief of Advanced Firearms and Interstate Nexus Branch, a sub-branch of the Firearms and Ammunition Technology Branch.*

<u>ATF-FATD-FTISB notes that even after it started manufacturing, and to the date of this report, Rare Breed Triggers LLC did not submit the FRT-15 to FATD's FTISB Branch for evaluation.</u> FTISB is the only Branch within FATD authorized to provide classifications on such devices submitted by individuals and the firearms industry. Rare Breed Triggers, LLC cites these private opinions seemingly to argue that it did not violate the law by making and transferring the FRT-15. Indeed, the effort in obtaining numerous private opinions while

Special Agent Michael T. Nuttall                                    163080-21-0006
                                                                   2021-676-RKD
                                                                   Page 8

**Background (cont.):**

failing to submit a sample to ATF-FATD suggests that Rare Breed, LLC intentionally avoided formal classification by the regulatory agency delegated authority to make such classifications.

**Findings:**

**Exhibit 2** is a Rare Breed Triggers, model FRT-15, AR15-type drop-in fire-control group, manufactured by Rare Breed Triggers located in Orlando, Florida. The Exhibit is not marked with a serial number. U.S. Patent No: 10,514,223 B1 (attachment I) includes illustrations which closely parallel the Exhibit 2 Rare Breed FRT-15 device in its "drop-in" concept, though having differing geometry in its component parts.

Exhibit 2 is comprised of the following individual component parts:

    One (1) aluminum housing
    One (1) hammer
    One (1) hammer spring
    Two (2) tubular pins
    One (1) trigger
    One (1) trigger spring
    One (1) locking bar
    One (1) solid pin
    One (1) locking bar spring
    Two (2) pins with interior threads at both ends
    Four (4) hex head screws with exterior threads

Exhibit 2 bears the following markings on the right side of its aluminum housing:

    **RARE BREED**
    **-TRIGGERS-**
    **US PAT. 10514223**

The Rare Breed FRT-15 device is designed to allow "drop-in" installation into AR15-type firearms. The device is designed to function in conjunction with an H3 weight buffer and M16-type machinegun bolt carrier rather than a standard semiautomatic AR15-type bolt carrier. The M16-type bolt carrier incorporates a contact surface that is unnecessary on AR15-type semiautomatic firearms because this surface is designed to "trip" the auto sear in standard M16-type machineguns. This surface is utilized to similarly "trip" the "locking bar" in FRT-15 equipped AR15-type firearms during the operating cycle. Indeed, it is telling that in attachment A, ██████ ██████████ U.S. Patent .: 10,514,223 B1, includes the following in 4, 50 and 55 (emphasis in red added):

*The bolt carrier assembly **52** used with the embodiments of this invention can be an ordinary (mil-spec) M16-pattern bolt carrier assembly, **whether operated by direct impingement or a gas piston system,** that has a bottom cut position to engage an auto sear in a fully automatic configuration. **The bottom cut creates an engagement surface 54 in the tail portion 56 of the bolt carrier body 58**. This is*

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 9

## Findings (Cont.):

> *distinct from a modified AR15 bolt carrier that is further cut-away so that engagement with an auto sear is impossible.*

Basic operation of the FRT-15 device installed within an AR15-type firearm having a M16-type machinegun bolt carrier is as follows, (also see Attachment A, pages 1 through 11, utilizing images pulled from a video animation available on Rare Breed Triggers web site, showing comparative views of AR15-type semiautomatic and FRT-15 mechanisms, with added ATF text and highlights):

- Image of semiautomatic AR15-type (left) and FRT-15 equipped firearm (right) with both firearms ready to fire with the hammer in a "cocked" position being held by the sear surface on the front of the trigger (yellow box).



Enlarged view of FRT-15

Special Agent Michael T. Nuttall

### Findings (Cont.):

- Rearward pressure is applied to "pull" the trigger thus releasing the hammer, which falls impacting the firing pin and discharging the primer, which in turn ignites the propellant powder to accelerate the projectile (bullet) down the rifled bore (Also see Attachment A, page 2 of 23).



Enlarged view of FRT-15

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 11

## Findings (Cont.):

- As the projectile moves past the gas port, a quantity of the gas is bled off through the gas port, gas tube and bolt carrier key into a cylindrical section in the bolt carrier where it expands and drives the bolt carrier rearward. <u>Note that this happens rapidly while rearward "pull" pressure from the trigger pull is generally maintained on the trigger.</u> During the first rearward travel of the carrier assembly, the bolt is rotated by the cam pin acted on by the bolt carrier cam slot. This rotation disengages the bolt lugs from the barrel extension lugs so the bolt is unlocked. The bolt carrier group then continues rearward with the unlocked bolt assembly which starts to act upon the hammer (Also see Attachment A, page 3 of 23).



Enlarged view of FRT-15

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 12

## Findings (Cont.):

- The fired cartridge case is withdrawn from the chamber as the bolt carrier group continues its rearward travel, also continuing to further depress the hammer (Also see Attachment A, page 4 of 23).



Enlarged view of FRT-15

Case 4:23-cv00830 O 01807 PX Document 77-14 Filed 12/01/23 06/10/25 Page 54 of 117 14 of 22 PageID 3606
Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 13

## Findings (Cont.):

- As the spent case is fully drawn out of the chamber, the spring-loaded ejector, acting against the left side of the case head, pushes the spent case out of the ejection port. The bolt carrier group continues rearward still depressing the hammer (Also see Attachment A, page 5 of 23).



Enlarged view of FRT-15

Special Agent Michael T. Nuttall
163080-21-0006
2021-676-RKD
Page 14

## Findings (Cont.):

- At this point, the operation of a firearm with an FRT-15 (right and bottom images) differs from a semiautomatic ΛR15-type firearm (left image). <u>In a semiautomatic ΛR-15-type firearm</u>, the hammer is pushed down by the bolt carrier and is retained by the disconnector. Upon the shooters release of the trigger, the disconnector releases the hammer, and the hammer comes to rest on the trigger sear surface, ready to expel a second projectile with a subsequent pull of the trigger. *Conversely*, in the FRT-15 equipped firearm, as the bolt carrier group continues rearward, the hammer is pushed down by the bolt carrier group, but it also pushes down on the trigger which forces it forward. The trigger is pushed slightly forward as an automatic function of the FRT-15 design without any further action by the shooter. This causes the hammer to engage the triggers sear surface. Differing from a standard semiautomatic firearm, the unique FRT-15 trigger design also engages the "locking bar" to <u>momentarily</u> keep the trigger in place so that the shooter may not override the automatic functioning of the weapon (Also see Attachment A, page 6 of 23).



Enlarged view of FRT-15

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 15

## Findings (Cont.):

- As the bolt carrier moves forward into battery using the force of the action spring, the contact surface on the required M16-type machinegun bolt carrier (also see attachment Λ page 12 of 23), which is designed to interact with the automatic sear on M16-type firearms), strikes the FRT-15 (right and bottom images) "locking bar", releasing the trigger. The necessity of an M16-type bolt carrier is clear at this point-it acts on the "locking bar" in the same way it acts on the machinegun auto-sear. Specifically, when the bolt moves back into firing position, it contacts the upper protruding surface area on the FRT-15 "locking bar", or the M16-type auto sear, thus allowing subsequent rounds to be automatically fired while a single pull (constant rearward pressure) is maintained on the trigger. Note that the disconnector on the AR15-type semiautomatic (left image) retains the hammer until the shooter manually releases the trigger (Also see next page and Attachment A, page 7 of 23).



Enlarged view FRT-15

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 16

## Findings (Cont.):

- After firing a shot with a <u>semiautomatic</u> AR15-type firearm, the shooter is required to manually release the trigger which releases the hammer from the disconnector (left image in yellow box), and then manually pull the trigger a second time to fire a subsequent shot (right image).




- If the shooter maintains constant rearward pressure from the original single function (pull) of the trigger, the self-acting or self-regulating mechanism of the FRT-15 device allows subsequent projectiles to be fired during the continuing cycle of operation (Also see Attachment A, 10 of 23).



FRT-15

Bolt carrier contact "trip" surface" contacts "locking bar" which disengages from trigger.

✓ FIRING
✓ UNLOCKING
✓ EXTRACTING
✓ EJECTING
✓ COCKING
✓ FEEDING
✓ CHAMBERING

With pressure still maintained from the original continuous function (pull) of the trigger, the trigger, which was <u>momentarily</u> kept in the forward position into which it was automatically forced, is now free to fire subsequent shots with maintained pressure from the original function (pull) of the trigger, due to the self-acting or self-regulating mechanism. The "locking bar" performs a timed delay function which is automatically disengaged during the operating cycle of the firearm, rather than a positive disconnect, as does the standard AR-15 type disconnector pictured in images above.

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 17

### Findings (Cont.):

- From the moment of the application of trigger pressure, and as long as rearward pressure is applied to the trigger through a single constant pull, a firearm with an FRT-15 continues to fire until the firing finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted; this firing takes place regardless of the purported "forced reset" pushing the trigger forward.

U.S. Patent No.: 10,514,223 B1 includes the following explanation revealing that the "locking bar" serves the same function as an auto sear in a typical machinegun-to capture a fire control component until the additional surface on an M16-type bolt carrier contacts it and releases the fire control component to automatically fire a subsequent shot.

*(57) Abstract*

*The locking bar is pivotally mounted in a frame and spring biased toward a first position in which it mechanically blocks the trigger member against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position, allowing the trigger member to be moved by an external force to a released position.*
*...*

*(65)*

*An upper end of the locking bar 62 extends above the upper edge of housing 12 and lower receiver 50 to be engaged by the engagement surface 54 of the bolt carrier body 58 when the bolt carrier assembly is at or near its in-battery position.*

This "*external force*" allowing the trigger member to be moved to a released position, is merely the continuous pressure applied to the trigger during the single continuous function (pull) of the trigger. With both an FRT-15 equipped AR15-type firearm, and an M16-type machinegun (with the selector set in its "Full Auto" position), the shooter maintains a constant pull of the trigger to fire subsequent shots with a single function (pull) of the trigger, through both the M16-type machinegun and FRT-15 equipped AR15-types self-acting or self-regulating mechanisms during the operating cycle of the firearms.

To function test the Exhibit 2 FRT-15 device, I installed the Exhibit into an AR15-type firearm obtained from the ATF National Firearms Collection (NFC). The ATF NFC firearm was comprised of a Bushmaster AR15-type receiver, M16-type upper barreled assembly (having the required M16-type machinegun bolt carrier), and an H3 buffer (See attachment A, slides 19, 20, 21).

The Exhibit 2 device (installed within the ATF exemplar firearm) was test fired on September 10, 2021, at the ATF test range, Martinsburg, West Virginia, using commercially available, Federal brand, 5.56x45mm caliber ammunition and a magazine from the NFC.

I first inserted one round of ammunition into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger. The NFC exemplar weapon, having the Exhibit 2 device installed, discharged the chambered cartridge, and expelled a projectile by the

Special Agent Michael T. Nuttall
163080-21-0006
2021-676-RKD
Page 18

## Findings (Cont.):

action of an explosive. I repeated this method of test-fire one additional time, obtaining the same result. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that the Exhibit 2 equipped firearm had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I next inserted a two-round ammunition load into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger holding it to the rear. The NFC exemplar weapon, having the Exhibit 2 device installed, fired two (2) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I continued this testing protocol by inserting a five-round ammunition load into a magazine, inserting the magazine into the weapon and chambered the cartridge, placing the selector into the "FIRE" position, and pulling the trigger and holding it to the rear. The NFC exemplar weapon, having the Exhibit 2 device installed, fired five (5) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

Next, the NFC exemplar weapon, having the Exhibit 2 device installed was tested utilizing a common plastic zip-tie to secure the trigger in a "pulled" position, was tested as follows:

- A common plastic 9-3/4-inch plastic zip-tie was installed around rear of the grip and the front of the Exhibit 2 trigger.

- The zip-tie was gradually tightened until the trigger was retracted just enough to allow the hammer to fall.

- With the trigger retained in this position, the bolt assembly was retracted and retained in an open position, with the aid of the bolt catch.

- A five-round ammunition load was placed into the magazine and inserted into the Exhibit 2 equipped ATF exemplar firearm.

- Without touching the trigger (which was being retained in a fixed position by the plastic zip-tie), the bolt catch was depressed allowing the firearm's bolt to travel forward and chamber a cartridge. Upon chambering the cartridge, the weapon fired the entire five-round ammunition load automatically without the trigger being repeatedly pulled and released.

- This same test was repeated a second time with a five-round ammunition load and once with a fifteen-round load. In all instances, the submitted sample discharged its entire ammunition load upon initiating

Special Agent Michael T. Nuttall

**Findings (Cont.):**

the firing sequence by depressing the bolt release, thus allowing the bolt assembly to move forward and both chamber and fire cartridges repeatedly.

Finally, I repeated the above test protocol with the exception that the common 9-3/4-inch plastic zip-tie was replaced with a ULINE Brand locking galvanized steel aircraft cable seal.

- Without touching the trigger (which was being retained in a fixed position by the ULINE Brand locking cable seal), the bolt catch was depressed allowing the firearm's bolt to travel forward and chamber a cartridge. Upon chambering the cartridge, the weapon fired the entire five-round ammunition load automatically without the trigger being repeatedly pulled and released.

- This same test was repeated a second time with a five-round ammunition load and once with a fifteen-round load. In all instances, the submitted sample discharged its entire ammunition load upon initiating the firing sequence by depressing the bolt release, thus allowing the bolt assembly to move forward and both chamber and fire cartridges repeatedly.

The FRT-15 "drop-in" device is uniquely designed to interact with the required M16-type machinegun bolt carrier during the cycle of operation in the same way that the M16-type machinegun bolt interacts with the machinegun auto sear. This allows the weapon to function as a self-acting, or self-regulating mechanism, with one continuous pull of the trigger, and allows the weapon to shoot automatically, more than one shot, without manual reloading, by a single function (pull) of the trigger, until its trigger is released, or the ammunition is exhausted.

While on standard semiautomatic AR15-type firearms, the cycle of operation is interrupted between shots by a disconnector which requires that the trigger be both manually released and manually pulled to fire a subsequent shot, no such action is required to fire subsequent shots on the FRT-15 equipped AR15-type firearm. Indeed, the FRT-15 design requires only that the shooter maintain the initial trigger pull, while the self-acting or self-regulating FRT-15 mechanism forces the trigger forward during the rearward movement of the required M16-type machinegun bolt carrier, and then automatically releases the trigger and hammer, as the "locking bar" interacts with the "trip surface" on the M16-type machinegun bolt carrier, as the firearm goes into battery. All of these actions occur if the shooter maintains a single, constant pull of the trigger.

It is worth reiterating that the legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, consistent with the language of the statute and Congressional intent, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger.

As received, Exhibit 2 is a combination of parts, designed and intended for use in converting a weapon (AR15-type) into a machinegun; therefore, it is a "**machinegun**" as defined in the GCA and NFA.

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 20

**Conclusions:**

**Exhibit 2** is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, it is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

**Exhibit 2** is a "**machinegun**" as defined in 18 U.S.C. § 921(a)(23).

**Exhibit 2**, being a machinegun, is also a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).

**Exhibit 2** is not marked in accordance with 26 U.S.C. § 5842(a).


Examined By:


RONALD DAVIS   Digitally signed by RONALD DAVIS
Date: 2021.10.19 16:17:46 -04'00'

Ronald K. Davis
Firearms Enforcement Officer



Approved By:
GREGORY   Digitally signed by GREGORY STIMMEL
STIMMEL   Date: 2021.10.20 15:28:03 -04'00'

Gregory Stimmel, Chief
Firearms Technology Criminal Branch


Attachments:  A- Report Pictures and Images
B- Rick Vasquez Firearms LLC/▮▮▮▮▮ AR1 Trigger Submission (307385)
C- RV Firearms LLC e-mail on for general mechanism of AR1 system.
D- U.S. Patent No.: 9,568,264, B2 (FLEX-FIRE TECHNOLOGY-Graves)
E- FATD Classification on AR1 System to ▮▮▮▮▮ /RV Firearms LLC (307385).
F- E-mail from ▮▮▮▮▮ stating they are an 07/02 FFL and requesting
a return date that will allow them to file required ATF Form 2 in required timeframe.
G- U.S. Patent No.: 9,816,772 B2 (FLEX-FIRE TECHNOLOGY-Graves).
H- U.S. Patent No.: 9,939,221 B2 (FLEX-FIRE G2 TECHNOLOGY-Graves).
I- U.S. Patent No.: 10,514,223 B1 ▮▮▮▮▮
J- U.S. Patent Assignment of Assignors Interest ▮▮▮▮▮ RARE BREED LLC).
K- ATF-FATD-FTCB  Report 2021-595-DAS.
L- ATF Cease and Desist Letter to RARE BREED LLC.
M- RARE BREED LLC  Filing dated 08/02/21, Case 6:21-cv-01245.


ATF Form   3311.2
Revised September 2014

ATF 851

Special Agent Michael T. Nuttall

163080-21-0006
2021-676-RKD
Page 21

Enclosed is a Firearms Technology Criminal Branch report provided in response to your request for assistance.  Please be aware that these documents constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103.  Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. §§ 6103(h)(2)(C) and (o)(1).  Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.