# Exhibit 20

**DECLARATION OF STAN HILKEY**

Pursuant to 28 U.S.C. § 1746, I, Stan Hilkey, hereby declare as follows:

1. I am a resident of Colorado. I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am Executive Director of the Colorado Department of Public Safety, a position I have held since 2014. As Executive Director, I have personal knowledge of the matters set forth below, or have knowledge of the matters based on my review of information and records gathered by members of my staff.

3. As Executive Director of the Colorado Department of Public Safety, I oversee the six divisions of the Department, including the Division of Criminal Justice, the Division of Fire Prevention and Control, the Colorado Bureau of Investigation, the Colorado State Patrol, the Division of Homeland Security and Emergency Management, and the Executive Director's Office, which also houses the Colorado Office of School Safety as well as the Colorado Integrated Criminal Justice Information System. I also serve on multiple state-level law enforcement and criminal justice task forces, advisory boards and commissions, and I am the Chair of the Colorado Fire Commission, Chair of the Homeland Security Advisors Council, Member of the Peace Officers Standards and Training (POST) Board, Board Member of Rocky Mountain High Intensity Drug Trafficking Board, and a member of the Rocky Mountain Intelligence Network. Prior to holding this position, I served 28 years in the Mesa County Sheriff's Office, where I was the elected Sheriff of Mesa County for 11 years. During my tenure as Sheriff, I was President of County Sheriffs of Colorado, a POST Board Member, two-time Chair of the Rocky Mountain High Intensity Drug Trafficking Board,

1

Colorado State Methamphetamine Task Force, and a member of the Pretrial Detention Task Force of the Colorado Commission on Crime and Juvenile Justice. I graduated from the Police Executive Research Forum's Senior Management In Policing (SMIP) in Boston, Massachusetts in 2010, FBI National Academy in Quantico, VA, in 2004, and from the Northwestern University School of Police Staff and Command in 2001.

<u>The Colorado Department of Public Safety</u>

4. The Colorado Department of Public Safety is dedicated to protecting Coloradans and preventing and investigating crime. It is comprised of six Divisions: the Colorado Bureau of Investigation, the Colorado State Patrol, the Division of Criminal Justice, the Division of Fire Prevention and Control, the Division of Homeland Security and Emergency Management, and the Executive Director's Office, which also houses the Colorado Office of School Safety as well as the Colorado Integrated Criminal Justice Information System.

5. The Department of Public Safety, through the Colorado Bureau of Investigation, investigates adult and juvenile criminal offenses, including, but not limited to incidents of homicide, sexual assault, organized crime, unlawful possession of a firearm, and other firearm-related offenses. The Department of Public Safety, through its Firearms InstaCheck Unit, performs comprehensive background investigations into each and every firearm purchase, as well as reviews all concealed weapon permit applications, helping to promote gun safety within the State of Colorado. And the Department of Public Safety, through the Division of Criminal Justice, manages grants and other programs aimed at gun violence prevention and support for victims of gun violence.

6. Gun violence is a significant challenge for Colorado. In 2023, there were at least 935 gun deaths in Colorado, including 237 homicides and 673 suicides. Colorado Firearm Data

Dashboard, available at https://cdphe.colorado.gov/colorado-gun-violence-prevention-resource-bank/colorado-firearm-data-dashboard. Colorado also had sixteen mass shootings in 2023, resulting in 20 deaths and 56 injuries. *Id.* Therefore, addressing gun violence is a priority for the Colorado Department of Public Safety.

<u>Colorado Law Regarding FRTs and Prohibited Possessors</u>

7. Forced Reset Triggers (FRTs) are banned under Colorado law. Section 18-12-102 of the Colorado Revised Statutes prohibits possession of "dangerous weapons," which are defined to include "rapid-fire device[s]," unless the possessor has a valid permit to possess a machine gun. "Rapid-fire device[s]" are in turn defined in 18-12-101(g.7) of the Colorado Revised Statutes to mean "any device, part, kit, tool, accessory, or combination of parts that has the effect of increasing the rate of fire of a semiautomatic firearm above the standard rate of fire for the semiautomatic firearm that is not otherwise equipped with that device, part, or combination of parts." Rapid-fire devices include machinegun conversion devices, such as FRTs, that are illegal under federal law. *See* 18 U.S.C. § 922(o) (prohibiting the transfer or possession of machineguns); see also 26 U.S.C. § 5845(b) (defining "machinegun" to include "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun).

8. Under federal law, it is unlawful for a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year (along with other enumerated factors) to "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). Colorado similarly prohibits possession of firearms by those with certain types of criminal convictions.

Colorado also expressly prohibits possession of FRTs and other rapid-fire devices by previous offenders. Specifically, Section 18-12-108 of the Colorado Revised Statutes provides that "[a] person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm as described in section 18-1-901(3)(h) or any other weapon that is subject to the provisions of this article subsequent to the person's conviction for a felony, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law." As noted above, Article 12 of Title 18 of the Colorado Revised Statutes defines the term "dangerous weapon" to include "rapid-fire devices." 18-12-101(1), CRS.

Prevalence of Forced Reset Triggers in Colorado

9. The CBI administers background checks for firearm transfers in Colorado; 338,863 such background checks were approved in 2024. Colorado Firearm Data Dashboard, available at https://cdphe.colorado.gov/colorado-gun-violence-prevention-resource-bank/colorado-firearm-data-dashboard. Firearms are not required to be registered, and law enforcement agencies such as the CBI are prohibited from keeping records or databases related to descriptions of firearms purchased, transferred, exchanged, or left for repair or sale on consignment. CRS § 29-11.7-102. The Colorado legislature authorized the CBI to investigate specific and illegal activity involving firearms in this state in 2024, pursuant to SB24-003. Because the CBI's Instacheck process is centered on fully functioning firearms, and not firearm parts, and the authority to investigate illegal possession of FRTs is a recent development, we do not have specific data on the number of FRTs in Colorado. However,

ATF Firearms Trace Data shows that at least thirty-one machineguns and sixty machinegun conversion devices were recovered and traced in Colorado in 2023. *See infra* ¶ 14.

10. FRTs and other machinegun conversion devices are often used in criminal activity targeting individuals. For example, a Gunnison man was recently sentenced to 110 months of imprisonment for being a felon in possession of a firearm. *See* Department of Justice Press Release, Gunnison Man Sentenced to 110 Months in Prison for Being Felon in Possession of a Firearm, available at *https://www.justice.gov/usao-co/pr/gunnison-man-sentenced-110-months-prison-being-felon-possession-firearm*. The defendant was identified as a possible burglary suspect in Mount Crested Butte. Officers subsequently searched his vehicle and found a handgun fitted with a machinegun conversion device.

11. I understand that the United States recently entered into a settlement agreement in which it promised to return all FRTs in its possession to any owner—including those who may not lawfully possess firearms given their prior felony convictions under federal law, and even in States that prohibit FRTs or FRT-equipped firearms—and obligated the United States not to enforce against anyone any statute or agency interpretation under which an FRT is "contended to be" a machinegun under the National Firearms Act in perpetuity. I also understand, based on statements from ATF personnel, that as of August 1, 2024, ATF had in its possession 11,884 FRTs.

12. I anticipate that if ATF proceeds with executing the promised returns, the number of FRTs and FRT-equipped firearms in Colorado, and the use of such FRTs, will increase. This will be caused by direct returns to individuals residing in Colorado, sales of FRTs returned to distributors and resellers that then sell the FRTs into Plaintiff States, and returns to individuals in other States who either bring their FRTs into our State or transfer the FRTs in

their possession to individuals residing in our State. Interstate trafficking of firearms and related devices, even when banned under state law, is a common problem that law enforcement in our State routinely confronts. Law enforcement frequently recovers firearms and related devices that are banned within our State, including weapons that are used for criminal purposes.

13. ATF's National Tracing Center provides firearm tracing information to requesting law enforcement agencies. *See* ATF Fact Sheet, National Tracing Center, available at https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center#:~:text=Tracing%20Process,and%20types%20of%20crime%20guns. ATF keeps track of data associated with such firearm tracing. Although that data does not represent all firearms involved in criminal activity, it does provide useful information on crime-involved firearms. *See* ATF Firearms Trace Data: Colorado – 2023, available at https://www.atf.gov/resource-center/firearms-trace-data-colorado-2023#total. According to ATF data, in 2023, at least 1,947 firearms that were recovered and traced in Colorado originated from another state, the District of Columbia, or Guam. *See* ATF Firearms Trace Data: Colorado – 2023 https://www.atf.gov/resource-center/firearms-trace-data-colorado-2023#total.

14. Firearms or firearm-related devices that are prohibited in Colorado are nonetheless recovered regularly in the State. At least thirty-one machineguns and sixty machinegun conversion devices were recovered and traced in Colorado in 2023. *See* ATF Firearms Trace Data: Colorado – 2023 https://www.atf.gov/resource-center/firearms-trace-data-colorado-2023#total. And earlier this year, two men in Colorado Springs were indicted by a federal grand jury for using a 3-D printer to make hundreds of machinegun conversion devices. *See*

6

"Colorado men busted in 3D-printing operation of 'machine gun conversion devices' to sell nationwide," available at https://www.9news.com/article/news/crime/colorado-suspects-arrested-3d-print-machine-gun-conversion-devices/73-aef08f20-2752-4f19-b2b2-5500d5ef1c79. The defendants are accused of selling the devices nationwide and shipping them out in toy LEGO boxes to conceal the true contents.

15. I anticipate that the widescale distribution of FRTs will likely lead to their increased use, including in criminal incidents in Colorado.

Cost of Responding to Incidents Involving Forced Reset Triggers

16. The State incurs greater costs when responding to crime scenes involving devices that increase a firearm's rate of fire, such as FRTs. Crimes committed using weapons with an accelerated rate of fire cause increased casualties and injuries. As a result, the State must send more law enforcement officers to the scene to interview victims and more emergency medical technicians (EMTs) to provide emergency medical care to individuals injured during the shooting. In addition, crime scenes involving weapons with an accelerated rate of fire are more likely to require a medical examiner to forensically investigate any deaths that occur as a result of the shooting, given the greater number of fatalities that occur as a result of such crimes.

17. Investigations into incidents involving weapons firing at an accelerated rate are notoriously complex. The CBI, and often additional state partners (for example, the Colorado State Patrol, which is also a division with DPS) assist local and federal law enforcement partners to bring justice to the community. A higher rate of fire results in increased deaths, injuries, evidence, and impact to the community. While we are not able to precisely estimate the

7

additional investigative cost to CDPS from crimes involving weapons firing at accelerated rates, the additional investigative work is substantial.

<u>Costs of Enforcing Laws Against Forced Reset Triggers</u>

18. As a result of the increase in FRTs within its borders described above, Colorado will have to divert greater law enforcement resources to enforce Colorado's own ban on FRTs.

19. The proliferation of rapid-fire devices, including machinegun conversion devices (MCDs), have consumed significant law enforcement resources per year, based on the resource-intensive nature of investigations and recoveries of these devices. In 2024, the Colorado Bureau of Investigation, in the Department of Public Safety, was provided additional authority to investigate criminal activity involving firearms, including investigating illegal firearm transfers and attempts to illegally obtain a firearm. See Senate Bill 24-03. In order to support this investigative authority, the Colorado legislature appropriated an additional $1,477,127 to the Department of Public Safety, including $1,079,356 for use by the Colorado Bureau of Investigation to hire ten full time employees for laboratory and investigative services. I anticipate that, if required to spend additional resources to investigate and recover illegal rapid-fire devices that have been returned by the federal government, the Department of Public Safety will need to request additional funds for full time employees from the state legislature, or divert funds from other public safety efforts.

20. In addition, the federal government's settlement agreement to return all FRTs in its possession to any owner—including those who may not lawfully possess firearms under federal law, given their prior felony convictions—will also contravene Colorado state law prohibiting possession of firearms, rapid-fire devices, and other weapons by those with certain criminal convictions. 18-12-108, CRS. Enforcing these state laws against individuals

8

being returned FRTs who are prohibited from possessing them will also result in increased state law enforcement costs.

21. In all, we expect to incur greater law enforcement costs as a result of the federal government's return of thousands of previously recovered FRTs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _6th_ day of June, 2025, in __Lakewood, Colorado__.

Stan Hilkey, Executive Director

Department of Public Safety

9