# Exhibit 26

## DECLARATION OF EDWARD TROIANO

Pursuant to 28 U.S.C. § 1746, I, Edward Troiano, hereby declare as follows:

1. I am a resident of Rhode Island I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Chief for the Bureau of Criminal Identification and Investigation, Rhode Island Office of the Attorney General, a position I have served in since January 1, 2019. Prior to that, I was a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives from 1994-2019. During that time, I twice served as the Acting Resident Agent in Charge for the Providence Field Office, between February 8, 2013 and April 6, 2013 and July 25, 2014 and February 3, 2015. I served as an undercover agent and as a Special Response Team (tactical team) operator. I have received numerous awards for my service, including eight ATF Special Act/Service Awards and designation as the top overall and academic award for my graduating class at the ATF national academy.

3. As Chief of the Bureau of Criminal Identification and Investigation, I have personal knowledge of the matters set forth below, or have knowledge of the matters based on my review of information and records gathered by members of my staff.

<u>Rhode Island Law Regarding FRTs and Prohibited Possessors</u>

4. FRTs are banned under Rhode Island law. Pursuant to R.I. Gen. Laws § 11-47-8(d), it is "unlawful for any person to possess a bump-fire device, binary trigger, trigger crank, or any other device that when attached to a semi-automatic weapon allows full-automatic fire." Similarly, under R.I. Gen. Laws § 11-47-8.1, it is "unlawful for any person within this state to modify any semi-automatic weapon such that it can shoot, is designed to shoot, or can be readily restored to shoot full-automatic fire with a single pull or hold of the trigger."

1

5.  Under federal law, it is unlawful for a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year (along with other enumerated factors) to "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S. Code § 922(g).

6.  Similarly, in Rhode Island, it is unlawful for persons who have been convicted of certain criminal offenses to possess a firearm., including a crime violence or a felony.  R.I. Gen. Laws § 11-47-5 (a).

## Impact of Forced Reset Triggers on Rhode Island

7.  I understand that the United States recently entered into a settlement agreement in which it promised to return all Forced Reset Triggers (FRTs) in its possession to any owner—including those who may not lawfully possess firearms given their prior felony convictions under federal law, and even in States that prohibit FRTs or FRT-equipped firearms—and obligated the United States not to enforce against anyone any statute or agency interpretation under which an FRT is "contended to be" a machinegun under the National Firearms Act in perpetuity. I also understand, based on statements from ATF personnel, that as of August 1, 2024, ATF had in its possession 11,884 FRTs.

8.  I anticipate that if ATF proceeds with executing the promised returns, the number of FRTs and FRT-equipped firearms in Rhode Island, and the use of such FRTs, will increase, resulting from sales of FRTs returned to distributors and resellers that then sell the FRTs into Plaintiff States, and returns to individuals in other States who either bring their FRTs into our State or transfer the FRTs in their possession to individuals residing in our State.  Interstate trafficking of firearms and related devices, even when banned under state law, is a common

problem that law enforcement in our State routinely confronts. Law enforcement routinely recovers firearms and related devices that are banned within our State, including weapons that are used for criminal purposes.

9. Firearms or firearm-related devices that are prohibited in Rhode Island are nonetheless recovered regularly in the State, especially when such devices are lawful in other states. For example, Rhode Island law prohibits the purchase or possession of "ghost guns." R.I. Gen. Laws Ann. § 11-47-8 ("No person shall manufacture, sell, offer to sell, transfer, purchase, possess, or have under his or her control a ghost gun or an undetectable firearm or any firearm produced by a 3D printing process."). Despite this, law enforcement routinely recovers ghost guns, oftentimes after their use in criminal activity. In one 2021 gang-related shooting on Carolina Avenue in Providence where nine people were injured, law enforcement recovered two "ghost guns." Similarly, in 2022, the Office of the Attorney General seized five ghost guns, 23 ghost gun kits, and two binary triggers in a single investigation. And in 2024, the Office of the Attorney General charged 100 criminal cases involving ghost guns.

10. I anticipate that the widescale distribution of FRTs will likely lead to their increased use, including in criminal incidents in Rhode Island.

<u>Cost of Responding to Incidents Involving Forced Reset Triggers</u>

11. Public safety agencies incurs greater costs when responding to crime scenes involving devices that increase a firearm's rate of fire, such as FRTs. Crimes committed using weapons with an accelerated rate of fire cause increased casualties. Mass casualty events caused by firearms with an increased rate of fire require an exponential surge in law enforcement and first responder personnel. This typically involves calling back off-duty personnel and

significant amounts of overtime pay for those responding to and investigating the crime scenes. The October 1, 2017 mass shooting in Las Vegas involved multiple firearms equipped with bump-stocks, which are similarly designed to increase the rate of fire of a semi-automatic firearm. This event not only resulted in 61 deaths but an estimated cost of $600 million.[1]

12. As a result of the likely increase in FRTs within its borders described above, Rhode Island will have to divert greater law enforcement resources to enforce Rhode Island's own ban on FRTs.

13. In addition, the federal government's settlement agreement to return all Forced Reset Triggers (FRTs) in its possession to any owner—including those who may not lawfully possess firearms given their prior felony convictions under federal law—will also contravene state law prohibiting firearm possession by those with certain criminal convictions. R.I. Gen. Laws § 11-47-5(a). Enforcing these state laws against individuals being returned FRTs who are prohibited from possessing them will also result in the diversion of law enforcement personnel and resources.

14. In all, we expect to incur greater public safety costs as a result of the federal government's return of thousands of previously recovered FRTs.

---

[1] Source: Gifford's Law Center, "The Las Vegas Massacre's $600 Million Financial Toll", available at https://files.giffords.org/wp-content/uploads/2018/09/Giffords%E2%80%94Financial-Toll-of-the-Las-Vegas-Massacre.pdf (last accessed on June 6, 2025).

4

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of June, 2025, in Cranston, RI.

Chief Edward Troiano
Bureau of Criminal Identification and Investigation
Rhode Island Office of the Attorney General

5