IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF NEW JERSEY, | § | |
| *ET AL.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 1:25-cv-01807-PX |
| | § | |
| BONDI; | § | |
| *ET AL.*, | § | |
| | § | |
| Defendants. | § | |

**OPPOSITION OF THE NON-FEDERAL DEFENDANTS
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

A. This Court may not issue an injunction that binds the Non-Federal Defendants because Plaintiffs have entirely failed to meet their burden to establish that this Court has personal jurisdiction over any of them. .............................................................. 1

B. This Court may not issue an injunction that binds the Non-Federal Defendants because Plaintiffs have entirely failed to meet their burden to establish that this Court is a proper venue as to them. ...................................................................... 8

C. Plaintiffs' theory of harm is too speculative to support either standing or preliminary injunctive relief. .................................................................................................... 11

D. The relief that Plaintiffs seek will be ineffectual and is substantially outweighed by the impact upon those who would be deprived of their valuable property. ................. 15

E. Any injunction should be no broader than necessary and the Court should require a substantial bond if any order prevents RBT from selling its returned triggers outside the Plaintiff States. ................................................................................ 18

# TABLE OF AUTHORITIES
## Cases

*Adrianza v. Trump*,
    505 F. Supp. 3d 164 (E.D.N.Y. 2020) ....................................... 8

*Apr. Ademiluyi v. Nat'l Bar Ass'n*,
    No. GJH-15-02947, 2016 WL 4705536 (D. Md. Sept. 8, 2016)................. 9

*Bartko v. Wheeler*,
    No. 1:13CV1006, 2014 WL 29441 (M.D.N.C. Jan. 3, 2014) .................. 9

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) .......................................... 13

*BNSF Ry. Co. v. Tyrrell,*
    581 U.S. 402, 137 S. Ct. 1549 (2017) ................................... 6

*BNSF Ry. v. Tyrrell*,
    —— U.S. ——, 137 S. Ct. 1549 198 L.Ed.2d 36 (2017) ...................... 5

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
    —— U.S. ——, 137 S. Ct. 1773 198 L.Ed.2d 395 (2017). ................. 5, 6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ................. 6, 7

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ................................................... 18

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .......................................... 14

*Catalog Mktg. Servs., Ltd. v. Savitch*,
    No. 88-3538, 1989 WL 42488 (4th Cir. Apr. 24, 1989) .................... 2

*Clapper v. Amnesty International USA*,
    —— U.S. ——, 133 S.Ct. 1138 185 L.Ed.2d 264 (2013) .................... 14

*Crabtree v. Aon Ins. Managers (Bermuda) Ltd.*,
    No. 23-1959, 2025 WL 943371 (4th Cir. Mar. 28, 2025) ................... 8

*Daimler AG v. Bauman*,
    571 U.S. 117 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) .................... 5

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) .......................................... 14

*E.E.O.C. v. Peabody W. Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) ............................................................. 2

*ESAB Grp., Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ............................................................. 6

*Feller v. Brock*,
   802 F.2d 722 (4th Cir. 1986) ......................................................... 15, 16

*Fitzgerald v. Wal-Mart Stores East, LP*,
   296 F.R.D. 392 (D. Md. 2013) .......................................................... 3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ................................................................... 7

*Gibbs v. Cty. of Delaware*,
   Civ. No. RWT 15-1012, 2015 WL 6150939, *2 (D. Md. Oct. 15, 2015).................. 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ............................. 5

*Grayson v. Anderson*,
   816 F.3d 262 (4th Cir. 2016) ........................................................... 2

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ............................. 5, 6

*Hickey v. St. Martin's Press, Inc.*,
   978 F. Supp. 230 (D. Md. 1997)......................................................... 9

*In re Aflibercept Pat. Litig.*,
   No. 1:23-CV-97, 2024 WL 3423047 (N.D. W. Va. July 9, 2024) ...................... 1

*In re Apple iPhone Antitrust Litig.*,
   874 F. Supp. 2d 889 (N.D. Cal. 2012).............................................. 2, 3

*In re Rationis Enters., Inc. of Panama*,
   261 F.3d 264 (2d Cir. 2001) ........................................................... 1

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ............................... 6

*Khashoggi v. NSO Group Technologies, Ltd.*,
   138 F.4th 152, 160 (4th Cir. 2025) .................................................... 8

*Lewis v. The Willough at Naples*,
   311 F. Supp. 3d 731 (D. Md. 2018)................................................... 4, 5

*Mackey v. Compass Marketing, Inc.*,
391 Md. 117, 892 A.2d 479vn.6 (2006) ................................................... 5

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) .................................. 6

*Miss. Band of Choctaw Indians v. Holyfield*,
490 U.S. 30 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) ............................ 5

*Nader v. Secretary of the Air Force*,
648 F. Supp. 3d 64 (D.D.C. 2022) ......................................................... 10

*National Ass'n for Gun Rights, Inc. v. Garland*,
741 F. Supp. 3d 568 (N.D. Tex. 2024) ................................................. 4

*National Wildlife Federation v. Gorsuch*,
744 F.2d 963 (3d Cir. 1984) .................................................................. 16

*Olberding v. Illinois Cent. R.R.*,
346 U.S. 338 74 S.Ct. 83, 98 L.Ed. 39 (1953). .................................... 9

*Oldham v. Pennsylvania State Univ.*,
507 F. Supp. 3d 637 (M.D.N.C. 2020) ................................................. 9, 10

*Pandit v. Pandit*,
809 Fed. Appx. 179 (4th Cir. 2020) ...................................................... 5, 6

*Perdue Foods LLC v. BRF S.A.*,
814 F.3d 185 (4th Cir. 2016) ................................................................ 5, 6, 7

*Proctor & Gamble Co. v. Ranir*,
No. 1:17-CV-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) ........ 8

*R.M.S. Titanic, Inc. v. Haver*,
171 F.3d 943 (4th Cir. 1999) ................................................................ 1

*Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.*,
301 F. Supp.2d 545 (E.D. Va. 2004) .................................................... 4

*Scotts Co. v. United Indus. Corp.*,
315 F.3d 264 (4th Cir. 2002) ................................................................ 14

*Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*,
181 F.3d 759 (6th Cir. 1999) ................................................................ 2

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d [344,] [4th Cir. 2020)] ........................................................... 7

*United States v. Orozco-Rivas*,
  810 Fed. Appx. 660 n. 7 (10th Cir. 2020 ........................................................ 3

*Walden v. Fiore,*
  571 U.S. 277 (2014) ...................................................................................... 7

*Winter v. Natural Resource Defense Council, Inc.,*
  555 U.S. 7 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ..................................... 14

## Statutes

28 U.S.C. § 1331 ................................................................................................ 4

28 U.S.C. § 1391(b)(2) and (e)(1) ..................................................................... 9

The National Association for Gun Rights, Inc. ("NAGR"); Texas Gun Rights ("TGR"), Rare Breed Triggers, LLC ("RBT"); Rare Breed Firearms, LLC ("RBF"), Kevin Maxwell; and Lawrence DeMonico (collectively, "Non-Federal Defendants") oppose Plaintiffs' preliminary injunction motion. In an effort to avoid unnecessarily duplicative briefing, the Non-Federal Defendants join in the arguments raised by the United States in its own opposition to that motion and write separately to emphasize certain matters of particular importance to them.

A. **This Court may not issue an injunction that binds the Non-Federal Defendants because Plaintiffs have entirely failed to meet their burden to establish that this Court has personal jurisdiction over any of them.**

The Non-Federal Defendants reserve their rights to raise deficient service of process, this Court's lack of personal jurisdiction over them, and improper venue at the motion to dismiss stage and expect to more fully brief those issues then. But it is already clear that Plaintiffs have failed in their obligation to establish personal jurisdiction over any of them, which is, of course, a prerequisite for the grant of any injunctive relief.

It is well-settled law that "a party cannot obtain injunctive relief against another without first obtaining *in personam* jurisdiction over that person…." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999); *see also, e.g., In re Rationis Enters., Inc. of Panama¸* 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction."). "Accordingly, when a challenge to jurisdiction is interposed upon an application for a preliminary injunction, the plaintiff must establish that there is 'a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *In re Aflibercept Pat. Litig.*, No. 1:23-CV-97, 2024 WL 3423047, at *8 (N.D. W. Va. July 9, 2024). Notably, this "reasonable probability" standard requires a "stronger showing" than the prima facie standard that might in other circumstances apply at a preliminary stage. *Catalog Mktg. Servs., Ltd. v. Savitch*, No. 88-3538, 1989 WL 42488, at *2 (4th

Cir. Apr. 24, 1989). And, of course, once personal jurisdiction has been challenged, "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

Finally, the fact that Plaintiffs purport to be joining the Non-Federal Defendants only as "necessary defendants" pursuant to FRCP 19 does not change the requirement that they show that personal jurisdiction (and venue) are proper. *See, e.g., E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."); *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir. 1999) (when a party is to be joined if "feasible" under Rule 19(a), "the issue of whether the court may exercise personal jurisdiction over the person arises. If personal jurisdiction is present, the person shall be joined. However, in the absence of personal jurisdiction, or if venue as to the person is improper," the case must either be dismissed or continue in that person's absence); *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 901 (N.D. Cal. 2012) ("There are three circumstances 'in which joinder is not feasible': (1) 'when venue is improper'; (2) 'when the absentee is not subject to personal jurisdiction'; and (3) 'when joinder would destroy subject matter jurisdiction.'") (internal citations omitted).

Here, Plaintiffs have not come close to meeting their heightened burden because their complaint and preliminary injunction papers are entirely devoid of any allegations that even purport to—much less actually—establish that this Court has personal jurisdiction over any of the Non-Federal Defendants. As a threshold matter, the complaint contains no allegation whatsoever—none—that this Court even has personal jurisdiction over any Non-Federal Defendant, much less offers even a conclusory explanation of the basis on which it is asserted.

There are simply no allegations establishing that any Non-Federal Defendant has connections to Maryland sufficient to support the exercise of either general jurisdiction or of specific jurisdiction over them in connection with a lawsuit to determine the propriety of the United States entering into a contract with them that was neither negotiated, entered into, nor will be performed in Maryland.[1]

To the contrary, the only allegations regarding the Non-Federal Defendants are: (1) that they are supposedly "necessary part[ies] as the Settlement Agreement that [they] entered into with other Defendants may be affected by the requested relief, and this may impair [their] interests under that agreement," Complaint ¶¶ 33-43; (2) that there was litigation between the United States and the RBT Defendants in New York, *Id.* at ¶ 74; (3) that the United States filed an *in rem* forfeiture action in Utah against certain FRTs seized from "Defendant DeMonico and certain subcontractors of the RBT Defendants," *Id.* at ¶ 75; (4) that there was litigation between the NAGR

---

[1] Nor can Plaintiffs rely on Rule 4(k)(1)(b) to establish personal jurisdiction over any of those named as "necessary parties" in the Complaint. That rule authorizes personal jurisdiction over a defendant "who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued." Under that rule, a court may exercise personal jurisdiction over a defendant joined as a necessary party if that defendant was served within a 100-mile radius of one of the federal courthouses in this District. *Fitzgerald v. Wal-Mart Stores East, LP*, 296 F.R.D. 392, 395 (D. Md. 2013) ("It is not disputed that these addresses are within 100 miles of both the Greenbelt and Baltimore federal courthouses."). For purposes of calculating the distance, courts in this District use what is variously termed the "air mile," "straight-line," or "as-the-crow-flies" method, rather than the driving distance method. *Id.* at 395 n.5. And the court "may take judicial notice of distance calculations." *Id.* at 395 n.6.

In this case, using the straight-line distance from the service addresses shown on each of the summonses issued by Plaintiffs to the Greenbelt and Baltimore courthouses shows that none of the "necessary parties" was served within a 100-mile radius of either courthouse, as calculated by a publicly available search engine. Declaration of Jonathan M. Shaw. Courts routinely take judicial notice of distances calculated by such private commercial websites. *See, e.g., United States v. Orozco-Rivas*, 810 Fed. Appx. 660, 669 n. 7 (10th Cir. 2020); *see also* David J. Dansky, *The Google Knows Many Things: Judicial Notice in the Internet Era,* 39 Colo. Law. 19, 24 (2010) ("Most courts are willing to take judicial notice of geographical facts and distances from private commercial websites….").

Defendants[2] and the United States in Texas, *Id.* at ¶ 76-79; (5) that on May 16, 2025, all Defendants entered into a Settlement Agreement that, among other things, resolved the New York, Texas, and Utah litigation—notably there is no suggestion that this Agreement was negotiated or entered into in Maryland nor could there be any consistent with Rule 11, *Id.* at ¶ 82-84; and (6) that RBT has distributed FRTs to "almost every Plaintiff State" and third-party resellers distributed them nationwide, *Id.* at ¶ 87. Notably, there is no allegation—nor could there be—that any of the Non-Federal Defendants resides or maintains a place of business in Maryland. Indeed, nothing that Plaintiffs have filed shows any significant connection between any of these Defendants and the State of Maryland.

This is a federal question case, Complaint ¶ 9 ("This Court has jurisdiction under 28 U.S.C. § 1331."), but, as no federal statute sued upon by plaintiffs contains a provision authorizing nationwide jurisdiction, the Court must determine whether an applicable state statute potentially confers jurisdiction over the defendant challenging it and whether the exercise of jurisdiction over that defendant would comport with the requirements of due process. *Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp.2d 545, 549 (E.D. Va. 2004). As a practical matter, when it comes to non-residents like the Non-Federal Defendants "a plaintiff must identify the specific provision of the Maryland long-arm statute that confers jurisdiction." *Lewis v. The Willough at Naples*, 311 F. Supp. 3d 731, 735 (D. Md. 2018), citing *Gibbs v. Cty. of Delaware*,

---

[2] At footnote 4 of their brief, Plaintiffs assert that Rare Breed Triggers "was not a party to the Texas litigation." That assertion is false. *National Ass'n for Gun Rights, Inc. v. Garland*, 741 F. Supp. 3d 568, 583 (N.D. Tex. 2024) ("Most notably, large Texas entities such as *Rare Breed Triggers, LLC*, Rare Breed Firearms, LLC, and their respective officers, Lawrence DeMonico and Kevin Maxwell (the 'Rare Breed Parties'), are also members of NAGR.") (emphasis added). Moreover, the court expressly granted the Rare Breed Parties injunctive relief, enjoining the United States from "pursuing criminal actions against the Rare Breed Parties based on the classification that FRTs are 'machineguns." *Id.* at 615.

Civ. No. RWT 15-1012, 2015 WL 6150939, *2 (D. Md. Oct. 15, 2015) ("[A] plaintiff is required to identify a specific provision within the Maryland long-arm statute which authorizes personal jurisdiction."); *see also, e.g. Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479, 493 n.6 (2006) (holding that plaintiff must identify an applicable prong of the Maryland long-arm statute *and* satisfy due process). Where, as here, a plaintiff fails to do so, that "provides an independent basis for dismissal or transfer." *Lewis*, 311 F. Supp. 3d at 735.

Plaintiffs' threadbare allegations will not support *general jurisdiction* over the Non-Federal Defendants. As the Fourth Circuit has recently explained:

> A court may exercise two types of personal jurisdiction, general or specific. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The Supreme Court has made clear that courts may only exercise general jurisdiction where the defendant's contacts "are so 'continuous and systematic' as to render [it] essentially at home" there. *BNSF Ry. v. Tyrrell*, ⸺ U.S. ⸺, 137 S. Ct. 1549, 1558, 198 L.Ed.2d 36 (2017). This is a stringent standard, which is appropriate because "[a] court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017).
>
> ***
>
> "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). Fittingly, the Supreme Court has held that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (defining "domicile" as "physical presence in a place in connection with a certain state of mind concerning one's intent to remain there").

*Pandit v. Pandit*, 809 Fed. Appx. 179, 183-84 (4th Cir. 2020). And absent exceptional circumstances—none of which is alleged (or could be) here—a corporate entity is subject to general jurisdiction only in its place of incorporation and principal place of business. *BNSF Ry.*

*Co. v. Tyrrell,* 581 U.S. 402, 137 S. Ct. 1549, 1558 (2017). As none of the Non-Federal Defendants is—or could be—alleged to reside in, be a citizen of, be incorporated in, or be headquartered in Maryland, there is simply no basis for the exercise of general jurisdiction over them.

As for *specific jurisdiction*, the Fourth Circuit has explained:

> "Specific jurisdiction is very different," [*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, —— U.S. ——, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017)], and exists only when "[t]he contacts related to the cause of action ... create a 'substantial connection' with the forum state," *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). "For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.' "*Perdue Foods*, 814 F.3d at 189 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In other words, the plaintiff must show that the defendant " 'purposefully directed' his activities at residents of the forum," *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)), and that the plaintiff's cause of action " 'arise[s] out of or relate[s] to' " those activities, id. (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414, 104 S.Ct. 1868).

*Pandit*, 808 Fed. Appx. at 184. As shown above, the first problem is that Plaintiffs have not identified—and cannot identify—any prong of the Maryland long-arm statute that would support the exercise of specific personal jurisdiction over these defendants in connection with the claims they have brought against the United States to invalidate a contract to which they are not a party and that was neither negotiated, entered into, nor performed in Maryland.

Even if Plaintiffs could overcome that problem, exercising specific personal jurisdiction over the Non-Federal Defendants on the basis of Plaintiffs' weak allegations would offend traditional notions of fair play and substantial justice and is therefore constitutionally impermissible. Plaintiffs entirely fail to show or allege any substantial connection between (a) the Non-Federal Defendants and Maryland, (b) the challenged Agreement and Maryland, and (c) specifically the Non-Federal Defendants' actions in connection with the challenged Agreement

and Maryland.  As the Fourth Circuit recently explained in the course of holding that an assertion

of specific jurisdiction was constitutionally impermissible:

> To meet the constitutional due process requirements for personal jurisdiction, Aon must have "minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." [*UMG Recordings, Inc. v.] Kurbanov,* 963 F.3d [344,] 351 [4th Cir. 2020)] (internal quotation marks omitted). This inquiry requires that Plaintiffs show that Aon "purposefully directed [its] activities at residents of the forum" and that the litigation results "from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotation marks and citation omitted). The Supreme Court has emphasized that the minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 283 (2014). This relationship must have two necessary aspects: first, the defendant must have created the contacts with the forum itself, and second, the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284-85 (internal quotation marks omitted); *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1024 (2021) ("In giving content to the [due process] formulation, the [Supreme] Court has long focused on the nature and extent of the defendant's relationship to the forum State.") (internal quotation marks omitted).
>
> We have previously synthesized the due process requirements for asserting personal jurisdiction into a three-prong test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Kurbanov,* 963 F.3d at 351-52 (internal quotation marks omitted). The plaintiff "must prevail on each prong." *Perdue Foods LLC,* 814 F.3d at 189.
>
> The district court correctly concluded that Aon's contacts with Virginia were not sufficient to establish personal jurisdiction. Aon's limited communications with Plaintiffs do not constitute purposeful availment of Virginia's laws. Aon's connection to Plaintiffs was facilitated solely through a contractual relationship with two companies that are nonresidents of Virginia. Only through performing its contractual duties to manage disbursements did Aon contact Virginia residents. Aon's emails, phone calls, wire transfers, and mailings to Virginia residents as part of its contractual duties are not connections that are typically associated with purposeful availment—including physical presence, soliciting business, or making in-person contact in the state. Therefore, Plaintiffs failed to demonstrate that Aon purposefully availed itself of the privilege of conducting business in Virginia.

*Crabtree v. Aon Ins. Managers (Bermuda) Ltd.*, No. 23-1959, 2025 WL 943371, at *1–2 (4th Cir. Mar. 28, 2025).

Plaintiffs—who must meet a heightened burden—fail on all three prongs of the Fourth Circuit's test. Among other things, as the Fourth Circuit has recently underscored, in the wake of *Walden v. Fiore,* any incidental effects that Plaintiffs speculate may occur (or even have occurred) in Maryland as a result of the Agreement are insufficient to render the exercise of personal jurisdiction in this District constitutional, emphasizing that "[t]he connection must be 'substantial,' so that 'a person cannot be haled into the forum simply because he knew that his conduct would have incidental effects there'" and that "the charged conduct must be 'expressly aimed' at the forum, or, in other words, the forum must be the 'focal point' of the conduct." *Khashoggi v. NSO Group Technologies, Ltd.*, 138 F.4th 152, 160, 164 (4th Cir. 2025) ("while it could be true that an interception of Khashoggi's data occurred in Virginia, we have explained that NSO has not directed conduct at the Commonwealth so as to create a substantial connection justifying an assertion of specific personal jurisdiction.") (citations omitted).

As a result, there is no personal jurisdiction over any of the Non-Federal Defendants and no preliminary injunction binding upon any of them can issue.

**B.      This Court may not issue an injunction that binds the Non-Federal Defendants because Plaintiffs have entirely failed to meet their burden to establish that this Court is a proper venue as to them.**

"When defendants object to venue, a district court must address venue before it can decide the merits of a motion for a preliminary injunction." *Adrianza v. Trump*, 505 F. Supp. 3d 164, 173 (E.D.N.Y. 2020), *vacated as moot sub nom. Adrianza v. Biden*, No. 20-4165, 2021 WL 10140434, at *1 (2d Cir. Oct. 13, 2021); *Proctor & Gamble Co. v. Ranir*, No. 1:17-CV-185, 2017 WL 3537197, at *4-5 (S.D. Ohio Aug. 17, 2017) (collecting cases establishing that it is "reversible error" to grant preliminary injunction where venue has not been determined to be proper). "'[I]n

a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant.'" *Oldham v. Pennsylvania State Univ.*, 507 F. Supp. 3d 637, 644 (M.D.N.C. 2020) (quoting *Bartko v. Wheeler*, No. 1:13CV1006, 2014 WL 29441, at *8 (M.D.N.C. Jan. 3, 2014), *aff'd*, 589 F. App'x 181 (4th Cir. 2015) (quoting *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 240 (D. Md. 1997))). And, as shown in the previous section, a failure to show proper venue as to defendants joined as purportedly "necessary parties" renders their joinder infeasible under Rule 19.

Here, Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(b)(2) and (e)(1). Neither provision supports venue as to any of the Non-Federal Defendants with respect to either Plaintiffs' *ultra vires* or APA claims against the United States.

Section 1391(b)(2) permits venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." Importantly, "[w]hile venue may be appropriate in multiple districts, district courts should 'take seriously the adjective 'substantial.'" *Oldham*, 507 F. Supp. 3d at 644. *Oldham* relied on *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356–57 (2d Cir. 2005), where the court observed: "We are required to construe the venue statute strictly. *See Olberding v. Illinois Cent. R.R.,* 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953). That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere. It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." (court's emphases). *Accord Apr. Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, 2016 WL 4705536, at *2 (D. Md. Sept. 8, 2016) ("Notably, the language of the statute does not provide that venue is proper where 'any part' of the events giving rise to the claim [occurred], but a 'substantial part.'").

But here, although the complaint contains a conclusory assertion in ¶ 11 that "Plaintiff the State of Maryland is a resident of this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred and will continue to occur within the District of Maryland," it contains no allegations—none—even purporting to lay a factual basis for the notion that a substantial part of the events or omissions giving rise to the claims occurred in Maryland. (That the State of Maryland is a resident of this District is not disputed but is irrelevant under section (b)(2) of the venue statute, application of which does not depend on the plaintiff's residence.) In other words, Plaintiffs offer a bare legal conclusion in support of their venue claim and such conclusory assertions should be disregarded. *See, e.g., Nader v. Secretary of the Air Force*, 648 F. Supp. 3d 64, 67 (D.D.C. 2022) (in determining whether venue is proper, "the Court … need not accept the plaintiff's legal conclusions as true."). Plaintiffs plead not a single fact that supposedly occurred in Maryland. Nor could they. To the contrary, nothing relating to the negotiation or execution of the challenged Agreement took place in Maryland. Declaration of Lawrence DeMonico ("DeMonico Dec.") at ¶ 3. Nor is any performance to take place in Maryland, as the United States has already made clear that it will not return any triggers—whether pursuant to the Northern District of Texas Order or the Agreement—in Maryland. *Id.*

And to the extent that Plaintiffs seek to rely on facts that they speculate "will continue to occur within the District of Maryland," future events are irrelevant because the statutory text clearly focuses the venue inquiry solely on events that have already "occurred." *Oldham*, 507 F. Supp. 3d at 646 ("only the events <u>giving rise</u> to a claim may justify venue, not impacts felt by a plaintiff after an action accrues"; collecting cases so holding) (court's emphasis); *Ademiluyi* 2016

WL 4705536, at *3 (feeling "all the injuries" from defendants' actions in a given district not sufficient to establish proper venue).

Because Plaintiffs have failed to plead *any* facts whatsoever supporting the naked assertion that any—much less a *substantial*—part of the acts or omissions leading up to the Agreement they challenge took place in Maryland, venue cannot be established with respect to any of the Non-Federal Defendants on either of the claims they assert against the United States.

Nor is venue proper under section 1391(e)(1), which provides for venue in cases in which the United States is a party. The final sentence of section 1391(e)(1) requires that when parties other than the United States are added to such a case, the regular venue requirements must be satisfied as to them. *Id.* ("Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.") As shown in the preceding paragraph, Plaintiffs have not met their burden to establish proper venue as to the Non-Federal Defendants under another venue provision and therefore cannot rely on section 1391(e)(1) to support venue.

Accordingly, this Court should decline to issue any preliminary injunction against the Non-Federal Defendants. Alternatively, the Court could transfer the entire case to the Northern District of Texas, the only jurisdiction where venue and personal jurisdiction would be proper as to all defendants.

## C.    Plaintiffs' theory of harm is too speculative to support either standing or preliminary injunctive relief.

In its own opposition, the United States explains in detail why Plaintiffs' theory of harm—depending as it does on multiple levels of speculation—cannot support standing under the actual injury prong. The Non-Federal Defendants join in that argument.

The Plaintiffs' theory is that FRTs *not* required to be returned by the order issued by the Northern District of Texas will either be returned or sold to residents of the Plaintiff States who will then violate the laws of their own states—as opposed to keeping the FRT at a location outside their home state or giving or selling the FRT to someone in a state that does not have a law banning them—and bring them home with them. This assumes that FRTs to be returned to individuals from the Plaintiff States (a) were seized from, or surrendered by; (b) persons not entitled to return under the Northern District of Texas order; and (c) that those individuals, if they exist, are prepared to risk prosecution by their home states by bringing into that state an FRT that they have been forewarned by ATF is illegal in their home state. There is a further level of speculation as well, insofar as the parade of horribles that the Plaintiff States trot out further depends on those FRTs being used for other nefarious purposes once they are brought into those states. And, finally, as discussed in Section D, below, Plaintiffs theory also relies on the speculative assumption that blocking the return of these particular FRTs would prevent those of their residents intent on getting them without regard for their state laws from actually doing so.

Similarly, with respect to FRTs to be returned to sellers, like RBT (the only Non-Federal Defendant that stands to receive any FRTs from ATF other than pursuant to the Northern District of Texas Order), Plaintiffs ask the Court to speculate that RBT will either sell the triggers it receives into the Plaintiff States or that it will sell them to persons elsewhere in the country, where such sales are lawful under state law, and the purchasers will then either break the law of one of the Plaintiff States or transfer them to someone who will. They speculate the same parade of horribles can be attributed to the limited number of triggers that RBT stands to receive from ATF. Finally, Plaintiffs also assume that the injunction they seek would in fact block their residents from obtaining other FRTs from other sources if they want them.

For its part, RBT does not intend to—and regardless of whether any injunction issues will readily commit not to—directly or indirectly sell, ship, or distribute any FRT returned to it by ATF into any of the Plaintiff States. DeMonico Dec. at ¶ 5. Thus, as a practical matter, the Plaintiffs' causal chain requires that individual purchasers of those specific triggers would have to be from the Plaintiff States and either be willing to break the law of their home state or at some point in the future transfer them to someone else who will. And then that subset of those specific triggers would then be misused in the ways that the Plaintiff States purport to fear.

Even without that commitment, as the United States details in its own brief, those causal chains are too speculative and attenuated to satisfy the "injury-in-fact" and "causation" prongs of the standing inquiry. *See, e.g., Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 382-83 ("plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts'"), 386-393 ("The government repeals certain restrictions on guns—does a surgeon have standing to sue because he might have to operate on more gunshot victims? The answer is no: The chain of causation is simply too attenuated."). As the Court observed, if it were to allow standing in such circumstances "there would be no principled way to cabin such a sweeping doctrinal change…. Police officers could sue to challenge a government decision to legalize certain activities that are associated with increased crime…. We decline to start the Federal judiciary down that uncharted path." *Id.* at 392. *Accord, e.g., Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) (holding that injury-in-fact prong of standing test was not satisfied where plaintiffs' "speculative" fears of "increased risk" of future injury were premised on an "attenuated chain of possibilities," even allegations that 33% of the class was likely to suffer harm fell short of establishing a "substantial

risk," and as a result were insufficiently "imminent" to pass muster under *Clapper v. Amnesty International USA*, —— U.S. ——, 133 S.Ct. 1138, 1155, 185 L.Ed.2d 264 (2013)).

Standing aside, Plaintiffs' attenuated causal chains are also too speculative to support preliminary injunctive relief. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("'Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a "clear showing" that the plaintiff is entitled to relief.'"), quoting *Winter v. Natural Resource Defense Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) ("plaintiff must make a "'clear showing of irreparable harm ..., and the required irreparable harm must be neither remote nor speculative, but actual and imminent.'"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."); *Blue Water Baltimore, Inc. v. Mayor & City Council of Baltimore*, 635 F. Supp. 3d 392, 403-04 (declining to enter a preliminary injunction despite finding likelihood of success on the merits because plaintiff's assertions about harm that "*may*" occur and that " 'the public…are *at risk* of experiencing'" were too speculative to establish irreparable harm) (court's emphases).

RBT's commitment not to sell any FRTs returned to it by ATF directly or indirectly into any of the Plaintiff States undermines Plaintiffs' attempt to demonstrate irreparable harm arising from the return of triggers to it.  635 F. Supp. 3d at 403-404 (evidence of steps taken by defendant

to address and remedy issue "casts doubt upon [plaintiff's] argument that it will be irreparably harmed").

D.  **The relief that Plaintiffs seek will be ineffectual and is substantially outweighed by the impact upon those who would be deprived of their valuable property.**

Even if it were to be granted, the relief that Plaintiffs seek would only prevent the return of a relatively small number of outdated FRTs to their owners. It would not address the many FRTs that will be returned pursuant to the existing order from the Northern District of Texas or the substantially greater number of new FRTs that have been, are being, and will be, sold in states where they are legal under state law. Because Plaintiffs' theory of harm is universally applicable to any FRT returned or sold anywhere in the United States, stopping the return of the relatively small number addressed by the preliminary injunction motion would be about as effective in stopping the downstream effects that Plaintiffs speculate about as would scooping out a handful of water while the stream continues flowing by; if that river is going to splash, that handful of water is not going to matter.

The Complaint is ambiguous about the extent to which Plaintiffs might challenge the return of FRTs pursuant to the final and non-appealable Order issued by the Northern District of Texas. In the their preliminary injunction motion, however, Plaintiffs appear to limit their request for preliminary injunctive relief to FRTs *not* required to be returned under that Order. *See* Proposed Order. But, to the extent that they seek to challenge that Order either in this preliminary injunction proceeding or in the case as a whole, they run headlong into binding, contrary, Fourth Circuit law. Specifically, in *Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986), the Fourth Circuit reversed as an abuse of discretion a preliminary injunction issued by the Northern District of West Virginia directing the United States to take actions contrary to those required by an existing injunction issued by a DC federal court. *Id.* at 727-29. The Fourth Circuit gave three reasons for its ruling.

First, it held that the *status quo* to be preserved, if at all, was the situation required by the existing DC order. *Id.* at 727. Second, it held that the balance of hardships clearly favored the United States when "[t]he West Virginia district court required [the United States] to choose between coordinate courts and to knowingly violate an outstanding court order." *Id.* "Third, and most important, issuance of the preliminary injunction did a grave disservice to the public interest in the orderly administration of justice. Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Id.* at 727-28.

The Fourth Circuit did not stop there. It went on to provide guidelines for the district court for proceedings following remand, noting that "[s]everal appellate courts have stated that discretion requires a district court to decline to hear a claim seeking relief from a judgment entered by a coordinate court," noting that this principle applies even when the plaintiff in the second case had not been a party in the first, and "advis[ing]" the district court to consider dismissal on remand. *Id.* at 728-29. Alternatively, it suggested that the district court *sua sponte* transfer the case to the court that had issued the original order—there DC, here the Northern District of Texas. *Id.* at 729 n.7. And the court cited the Third Circuit's opinion in *National Wildlife Federation v. Gorsuch*, 744 F.2d 963, 969 (3d Cir. 1984), in which the Third Circuit "bar[red] a plaintiff that had failed to appeal the denial of its motion for intervention from collaterally attacking the consent judgment which ultimately issued in the case." *Id.* at 728 n.6. Here, the Fifth Circuit rejected multiple attempts to intervene, Brief at 7-8, but there has been no appeal from those rulings.

Thus, this Court should decline to hear any collateral attack by the Plaintiff States—whether in the context of this motion or otherwise—upon the order of the federal court in Texas.

Yet, there is no reason to suppose that the population of FRTs returned as required by the Texas court will not include FRTs that must be returned to NAGR and TGR members who reside

in states where FRTs may be illegal under state law (although, as the ATF has made clear, they will not be returned to those persons in those states). Nor will anything prevent the sales of new FRTs not in the possession of ATF. There are currently over 75 sellers of FRTs doing business in the United States. DeMonico Dec. at ¶ 6. Many of them have been selling since the Texas court issued its final injunction in August 2024. *Id.* And, unlike RBT—which declines to ship FRTs into states where they are illegal under state law—at least some of them appear to be shipping FRTs directly into such states. *Id.* Thus, a resident of one of the Plaintiff States who is bound and determined to bring an FRT home in violation of state law has ample opportunity to do so regardless of the outcome of Plaintiff's current motion.

Plaintiffs offer no evidence whatsoever concerning the marginal number of FRTs an injunction would prevent from entering their states on the margin. Nor could they because they necessarily speculate about every link in their causal chain. But two things are undeniable: Those who really want to get FRTs and are willing to disregard state law to do so can. Thus, the quantum of benefit to be gained by the Plaintiff States from the proposed injunction is dubious. And preventing ATF from returning valuable property (FRTs sell at retail for as much as $500), to its owners, including RBT which estimates that ATF holds property belonging to it with a retail value exceeding $2.5 million (DeMonico Dec. at ¶ 7)—only in states where their possession of that property is legal—will impose a significant impact on them. Under those circumstances, the balance of hardships tips sharply in favor of defendants—and even more sharply when the Court takes into account the interests of those absent persons, not named as "necessary parties" for some reason, whose FRTs would not be returned.

**E.** **Any injunction should be no broader than necessary and the Court should require a substantial bond if any order prevents RBT from selling its returned triggers outside the Plaintiff States.**

No preliminary injunction should issue. But in accord with the well-settled rule that "injunctive relief should be no more burdensome to the defendant than necessary," *Califano v. Yamasaki*, 442 U.S. 682, 709 (1979), if the Court were to conclude that some quantum of relief should be granted, then it should be limited to transforming the commitments by ATF—regarding not delivering FRTs into states where they are illegal—and RBT—regarding not selling any FRTs that are returned to them into Plaintiff States—into a preliminary injunction. That would insure that no FRTs are directly introduced into states where they are illegal under state law by virtue of the Agreement whose provisions Plaintiffs challenge, while recognizing that the more speculative aspects of Plaintiffs' causal chains regarding conduct outside their states do not provide an adequate basis for injunctive relief.

Furthermore, in view of the cost that any injunction that would have the effect of preventing RBT from selling returned FRTs to persons *outside* the Plaintiff States, the Plaintiff States should be required to post a bond large enough to compensate RBT for the likely diminution in value of those FRTs during the litigation. FRCP 65(c). RBT estimates that amount to be at least $500,000. DeMonico Dec. at ¶ 9.

Respectfully submitted this 27th day of June 2025,

/s/ Jonathan M. Shaw
Jonathan M. Shaw M.D. Bar No. 11328
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 574-1206
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 27th, 2025, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which notified all parties and their counsel of record.


/s/ Jonathan M. Shaw
Jonathan M. Shaw M.D. Bar No. 11328