IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF NEW JERSEY, *ET AL*. | § § § § | |
| *Plaintiffs*, | | |
| v. | § § | No. 1:25-cv-01807-PX |
| BONDI; *ET AL.*, | § § § § | |
| *Defendants*. | § | |

### DECLARATION OF LAWRENCE A. DeMONICO

I, Lawrence A. DeMonico, declare as follows:

1. I am the President of Rare Breed Triggers, Inc. ("RBT") and a named Non-Federal Defendant in this matter. I make this declaration based on my personal knowledge and in support of the Non-Federal Defendants' opposition to Plaintiffs' motion for a preliminary injunction. If called upon to testify in this matter, I could competently testify as follows:

2. I reside in Austin, Texas. RBT is incorporated under the laws of the State of Texas and maintains its principal place of business in Wichita Falls, Texas. Neither I nor RBT maintains any physical presence, employees, or business operations in the State of Maryland. Nor do we direct any business activities—including advertising, solicitation, or sales—toward residents of Maryland.

3. Together with counsel I participated in the negotiation of the May 16, 2025 settlement agreement with the United States. No part of those negotiations or the agreement's execution occurred in Maryland. Nor did I at any time expect the United States to deliver any FRTs into the State of Maryland pursuant to that settlement agreement, given Maryland law with

respect to restrictions on forced reset triggers ("FRTs") and the intent not to deliver FRTs into states where they are restricted under state law that the United States had expressed during the course of the Texas litigation.

4. RBT's sales operations do not target or include shipments into Maryland or any other Plaintiff State where forced reset triggers ("FRTs") are restricted by state law.

5. I hereby affirm under oath that RBT will not sell, ship, or otherwise distribute—whether directly or indirectly—any FRTs returned to it by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") into any Plaintiff State. This commitment is consistent with RBT's long-standing policy of voluntarily declining to conduct business in states where FRTs are prohibited. RBT employs sophisticated and confidential internal systems designed to prevent the sale or shipment of FRTs into any state where they are restricted. While I cannot disclose the specific methods without compromising their effectiveness, I can confirm they are robust, actively monitored, and updated as necessary. RBT remains fully committed to compliance and will promptly update its restrictions should FRTs become prohibited in any additional jurisdictions.

6. At present, I am aware of more than 75 sellers in the United States who are actively marketing and selling FRTs. Many of these sellers began operations shortly after the final judgment entered on July 24, 2024, by Judge Reed O'Connor in *National Association for Gun Rights, Inc. v. Garland*, in the Northern District of Texas. Thus, sales of FRTs have been ongoing for nearly a year. Moreover, unlike RBT, many of those sellers continue to ship FRTs into states where they are illegal under state law.

7. RBT owns several thousand FRTs currently in ATF custody. We have not received a full accounting of the product still held by the ATF, but based on available information and inventory records, I estimate the total retail value of those FRTs exceeds $2.5 million.

8. If the Court were to issue an injunction preventing RBT from selling lawfully returned FRTs—even outside of the Plaintiff States—the resulting business losses would be substantial.

9. Even if that injunction were later overturned, RBT would still suffer substantial harm. Given the currently ongoing introduction into the market of newer models of FRTs, the retail value of the older generation of FRTs belonging to RBT that are currently held by ATF is likely to drop significantly over the next 12-18 months. My conservative estimate of the diminution in their realizable value, and thus the damages to RBT, that would be caused by a preliminary injunction preventing RBT from selling those FRTs during the pendency of the injunction outside the Plaintiff States in jurisdictions where they are not restricted under state law, would be at least $500,000 even if the injunction were later reversed. Accordingly, if any such injunctive relief is ordered, RBT respectfully requests that Plaintiffs be required to post a bond in an amount not less than $500,000 pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Lawrence A. DeMonico

Executed on this 24th day of June, 2025, in Austin, Texas.